194 P.3d 531

NUUANU VALLEY ASSOCIATION, a Hawai'i non-profit corporation, Plaintiff–Appellant,

v.

CITY AND COUNTY OF HONOLULU; Henry Eng, Director of Department of Planning and Permitting in his official capacity; David Tanoue, Deputy Director of Department of Planning and Permitting in his official capacity, Defendants–Appellees,

and

Laumaka, LLC, Intervenor–Appellee,

and

John Doe 1–10; Jane Does 1–10; Doe Partnerships 1–10; Doe Corporations 1–10; and Doe Governmental Units 1–10, Defendants.

No. 28599.

Supreme Court of Hawai'i.

Oct. 24, 2008.

Reconsideration Denied Nov. 21, 2008.

As Corrected Nov. 25, 2008.

James J. Bickerton and Scott K. Saiki of Bickerton Lee Dang & Sullivan, Honolulu, for Plaintiff–Appellant Nuuanu Valley Association.

Don S. Kitaoka and Lori K.K. Sunakoda, Deputies Corporation Counsel, for Defendants–Appellees City and County of Honolulu, Henry Eng, and David Tanoue.

David B. Rosen of the Law Office of David B. Rosen, ALC, for Intervenor–Appellee Laumaka LLC.

MOON, C.J., LEVINSON, NAKAYAMA, and DUFFY, JJ. and ACOBA, J., concurring separately.

Opinion of the Court by NAKAYAMA, J.

 Plaintiff–Appellant, Nuuanu Valley Association ("NVA"), appeals from the Circuit Court of the First Circuit's[1] ("circuit court's") May 17, 2007 amended final judgment in favor of Defendants–Appellees City and County of Honolulu, Henry Eng, in his official capacity, and David Tanoue, in his official capacity (collectively, "Appellees"), and Intervenor–Appellee Laumaka, LLC ("Laumaka").[2] On appeal, NVA presents the following points of error: (1) the Uniform Information Practices Act ("the UIPA"), as provided by Hawai'i Revised Statutes (HRS) Chapter 92F, mandates that "documents provided by private developers to [a government agency] become public records when received, and written communications to private developers become public records (not mere drafts) when transmitted"; (2) statutory "exceptions ... that would make these public records unavailable to the public for inspection" are inapplicable; (3) Appellees failed to follow its administrative rules and engaged in improper rule making; (4) development of the Laumaka subdivision will result in the "use" of state or county lands thereby triggering the environmental assessment ("EA") requirement of the Hawai'i Environmental Policy Act ("HEPA"); and (5) the circuit court abused its discretion when it denied NVA's motion for preliminary injunction. For the reasons that follow, we hold: (1) that prior to its acceptance, an engineering report submitted to a government agency in connection with a subdivision application, and any written comments made by the agency thereon, does not constitute a "government record" requiring disclosure pursuant to the UIPA; (2) that the circuit court erred in its determination that Appellees violated neither its administrative rules nor the Hawai'i Administrative Procedures Act ("HAPA"); (3) that Laumaka's subdivision does not "propose the use of state or county lands"; and (4) that NVA has not successfully carried its burden of showing irreparable damage for a preliminary injunction. Accordingly, we affirm in part and reverse in

---

1. The Honorable Randal K.O. Lee presided.

2. We note that Laumaka filed its answering brief on February 6, 2008. Therein, Laumaka states that it "takes no position in this appeal" and "defers to [Appellees]" as to NVA's points of error (1) and (2). As to the remaining points of error, Laumaka merely "refers [this court] to and relies upon" several of its motions filed in circuit court.

Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(c) (2008) instructs that the answering brief "shall be of like character as that required for an opening brief except that no statement of points shall be required, and no other section is required unless the section presented in the opening brief is controverted." Laumaka's answering brief consists of five pages that are undivided by section. For example, Laumaka's answering brief does not contain a counter-statement of the case section and an argument section. See HRAP Rules 28(b)(3), 28(b)(7). Because Laumaka's answering brief fails to comply with HRAP Rule 28(c), we decline to consider any arguments raised by Laumaka.

part the circuit court's May 17, 2007 amended final judgment.

## I. BACKGROUND

The subject property of the instant case consists of approximately 45.9 acres of steep mountainside land in upper Nuʻuanu valley. The property had been zoned for residential use since approximately 1943. In 2004, Puu Paka DP, LLC, the prior owner of the subject property, submitted an application to the Department of Planning and Permitting of the City and County of Honolulu ("DPP") for approval to develop a subdivision consisting of nine residential lots.

NVA is a Hawaiʻi non-profit organization whose members are homeowners and residents who live in Nuʻuanu valley. On February 15, 2005, David Hall ("Hall"), a member of the NVA, submitted a letter to DPP requesting to inspect and obtain copies of all comments and engineering reports pertaining to Puu Paka DP, LLC's proposed subdivision.

In a letter dated February 25, 2005, DPP responded to NVA's letter, in pertinent part, as follows:

First, our subdivision files are not intended to be a central file for all documents, reports, drawings, comment sheets and correspondence. Documents, reports, drawings, comment sheets, and correspondence are usually kept separately in several areas, including the Civil Engineering Branch (CEB), Traffic Review Branch, Subdivision Branch, Wastewater Branch, and other agencies, such as the Board of Water Supply. Consequently, we apologize if there were some misconceptions about the completeness of our subdivision files.

Second, for reports and plans, which are still under review, we may not have them in our possession at all times. Our usual practice is to return these reports and plans with our comments marked thereon to the person or company who prepared them. For example, as of February 17, 2005, the CEB does not have a copy of the geotechnical report in our files, since it was returned to the consultant along with comments.

Third, our review comments, in addition to being directly marked on reports and plans, are usually summarized electronically in our system called "POSSE." Attached are copies of the electronic review comments that were not in our files on January 27 and 28, 2005.

Fourth, for security reasons, we ask that future requests for information be made through our Data Access and Imaging Branch. . . .

The subdivision application submitted by Puu Paka DP, LLC was deferred on or about January 21, 2005, and subsequently expired on or about October 21, 2005. On June 17, 2005, the subject property was sold to Laumaka, who proceeded with Puu Paka DP, LLC's earlier plan to subdivide the property.

On October 27, 2005, Laumaka submitted a new application to DPP for subdivision of the subject property into nine residential lots. Thereafter, Hall submitted letters to DPP on, among other dates, November 16, 2005, requesting all engineering reports submitted in connection with Laumaka's proposed subdivision.

In a letter dated December 13, 2005, DPP responded to Hall's November 16, 2005 letter, as follows:

In response to your November 16, 2005 letter . . ., any engineering report that is formally accepted by our department as part of a permit application is available for inspection and copying at the Data Access Imaging Branch. Engineering reports that may be in our possession at the time of public records request and which are being evaluated by the department as part of its decision for acceptance, are withheld from public disclosure as being part of the department's deliberative process. Once these reports have been formally accepted, they are available for inspection and copying.

On March 15, 2006, NVA provided notice to DPP of its intent to sue it for violation of the UIPA.

On March 17, 2006, DPP "accepted" a geotechnical report prepared for the subject

property by Masa Fujioka and Associates. This report was made available to the public on the same day.

On March 23, 2006, NVA filed a motion for preliminary injunction and its complaint in the circuit court seeking declaratory and injunctive relief for Appellees' alleged violation of the UIPA and HEPA. NVA filed a first amended complaint on April 28, 2006, which sought the same relief for the following amended claims: (1) DPP failed to produce public records pursuant to the UIPA; (2) DPP's record policies violate the UIPA; (3) DPP failed to comply with its administrative rules and engaged in improper rule making; and (4) an environmental assessment should have been prepared pursuant to HEPA.

On April 20, 2006, DPP found that a "Preliminary Drainage Report" prepared by Mitsunaga and Associates for the subject property was "acceptable." Consistent with its departmental policies and procedures, the "Drainage Report" was made available to the public later that day.

On May 15, 2006, NVA's motion for preliminary injunction was denied after five days of hearing before the circuit court. Ultimately, at the May 15, 2005 hearing, the circuit court orally concluded that the reports requested by NVA were not records maintained by DPP, and NVA unsuccessfully met its burden to warrant the issuance of a preliminary injunction.

On May 19, 2006, tentative approval was granted by DPP for Laumaka's proposed subdivision subject to certain conditions.[3]

On June 28, 2006, the circuit court filed its order denying NVA's motion for preliminary injunction. Therein, the circuit court found, among other things, that the subdivision process consists of three-parts, as follows: (1) tentative approval; (2) approval of final engineering plans; and (3) approval of final map.

On October 27, 2006, NVA filed two motions for partial summary judgment, which contained a total of four "counts." Count one sought production of all government records in relation to the application for Laumaka's subdivision. Count two sought a declaratory ruling that DPP's practice of not disclosing engineering reports until they are accepted violates the UIPA. Count three sought a declaratory ruling that DPP's practice constitutes improper rule-making and violates DPP's administrative rules. Count four sought a declaratory ruling that Appellees are required to prepare an environmental assessment in connection with Laumaka's subdivision. NVA's first motion for partial summary judgment contained "counts" one through three and alleged that "[s]ummary judgment is appropriate because there is no genuine issue of material fact, and [NVA] is entitled to judgment as a matter of law." Its second motion for partial summary judgment did not contain a similar statement.

NVA's motions for partial summary judgment were orally denied by the circuit court at a hearing held on November 15, 2006. At this hearing, Appellees orally requested that the circuit court grant summary judgment in their favor. The circuit court decided to continue the hearing to November 20, 2006, in order to give NVA an opportunity to respond to Appellees' oral motion.

On November 28, 2006, the circuit court filed its findings of fact, conclusions of law, and order denying NVA's motions for partial summary judgment, and granting Appellees' motion for summary judgment. Therein, the circuit court made the following determinations: (1) evidence presented revealed that unaccepted reports were returned to Laumaka, and there was a lack of evidence suggest-

---

**3.** Tentative approval was granted subject to the following conditions:

 1. Construction of improvements, utilities and drainage facilities in accordance with City standards.

 2. Compliance with [the] Wastewater Branch's requirement for the Wastewater System Facility Charge.

 3. Compliance with the provisions of Park Dedication Section 22–7, Revised Ordinance of Honolulu.

 4. Recordation of an acceptable declaration of restrictive covenants informing future owners of potential rockfall hazards and other restrictions, and their responsibilities to maintain, repair and restore their drainage and rockfall protection improvements.

 5. Submission of the final subdivision map information. . . .

 6. Filing of 15 copies of the final survey maps prepared by a licensed professional land surveyor and drawn to Land Court form.

ing that Appellees "maintained" the reports or copies of the reports that were unaccepted by DPP; (2) unaccepted reports and the agency's comments thereon are not records maintained by DPP, and therefore are not "government records" that are required to be disclosed under the UIPA; (3) assuming, *arguendo*, that DPP maintained copies of the unaccepted reports, these unaccepted reports and the comments thereon are part of DPP's pre-decision process and are protected from disclosure under the deliberative process exception of the UIPA; (4) DPP's administrative rules are consistent with the UIPA and, in light of the above determinations, "there [was] no showing that the enactment of departmental rules had violated its own rules and procedures nor violated the" HAPA; and (5) Laumaka's proposed subdivision does not propose the use of state or county land for which an EA would be required under HEPA.

An amended final judgment was filed on May 17, 2007.[4] On June 15, 2007, NVA timely filed its notice of appeal.

On May 7, 2008, NVA filed an application to transfer its appeal from the Intermediate Court of Appeals to this court. On May 28, 2008, this court granted NVA's application for transfer pursuant to HRS § 602–58(a)(*l*) (Supp.2007),[5] and accepted its application pursuant to HRS § 602–58(b)(*l*) (Supp. 2007).[6]

## II. STANDARD OF REVIEW

■ On appeal, the grant or denial of summary judgment is reviewed *de novo*. *See State ex rel. Anzai v. City and County of Honolulu*, 99 Hawai'i 508, 514, 57 P.3d 433, 439 (2002); *Bitney v. Honolulu Police Dep't*, 96 Hawai'i 243, 250, 30 P.3d 257, 264 (2001).

[S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and inferences drawn therefrom in the light most favorable to the party opposing the motion.

*Kahale v. City and County of Honolulu*, 104 Hawai'i 341, 344, 90 P.3d 233, 236 (2004) (citation omitted).

## III. DISCUSSION

### A. Prior To Its Acceptance, An Engineering Report Submitted To a Government Agency In Connection With a Subdivision Application, and Any Written Comments Made By the Agency Thereon, Does Not Constitute a "Government Record" Requiring Disclosure Pursuant To the UIPA.

■ "The affirmative responsibility imposed on agencies by the UIPA[,]" as provided by HRS Chapter 92F, "is to make government records available for inspection and copying during regular business hours, upon request by any person." *State of Hawai'i Org. of Police Officers (SHOPO) v. Soc'y of Prof'l Journalists–Univ. of Hawai'i Chapter*, 83 Hawai'i 378, 393, 927 P.2d 386, 401 (1996). HRS § 92F–11 (1993) provides, as follows:

4. The circuit court's original judgment was filed on December 18, 2006. On December 28, 2006, NVA filed a notice of appeal from this judgment. However, on March 16, 2007, the Intermediate Court of Appeals dismissed the appeal for lack of jurisdiction because the circuit court's original judgment failed to satisfy the requirements of an appealable final judgment.

5. HRS § 602–58(a)(1) provides that "[t]he supreme court, in the manner and within the time provided by the rules of court, shall grant an

application to transfer any case within the jurisdiction of the intermediate appellate court to the supreme court upon the grounds that the case involves" "a question of imperative or fundamental public importance."

6. HRS § 602–58(b)(1) provides that "[t]he supreme court ... may grant an application to transfer ... upon the grounds that the case involves" "a question of first impression or a novel legal question."

(a) All *government records* are open to public inspection unless access is restricted or closed by law.

(b) Except as provided in section 92F-13, each agency upon request by any person shall make *government records* available for inspection and copying during regular business hours.

(c) Unless the information is readily retrievable by the agency in the form in which it is requested, an agency shall not be required to prepare a compilation or summary of its records.

(d) Each agency shall assure reasonable access to facilities for duplicating records and for making memoranda or abstracts.

(e) Each agency may adopt rules, pursuant to chapter 91, to protect its records from theft, loss, defacement, alteration, or deterioration and to prevent manifestly excessive interference with the discharge of its other lawful responsibilities and functions.

(Emphases added.) A "'[g]overnment record' means information *maintained* by an agency in written, auditory, visual, electronic, or other physical form." HRS § 92F-3 (1993) (emphasis added). The word "maintain[ ]" is undefined by HRS Chapter 92F.

▮ NVA essentially asserts that the engineering reports submitted by Laumaka became "government records" the moment they were received by DPP. In support of its assertion, NVA relies primarily on the definition of the word "maintain" that is provided by the Uniform Information Practices Code ("UIPC").

Hawaii's legislature has indicated an intent to base the UIPA on the UIPC of the National Conference of Commissioners on Uniform State Laws. *See Kaapu v. Aloha Tower Dev. Corp.*, 74 Haw. 365, 387–88, 846 P.2d 882, 891–92 (1993) (interpreting Sen. Stand. Comm. Rep. No. 2580, in 1988 Senate Journal, at 1093–95). The UIPC defines the word "maintain" to mean "hold, possess, preserve, retain, store or administratively control." Unif. Info. Practices Code (UIPC) § 1–105. The commentary suggests that the

word "maintain" is "to sweep as broadly as possible. It includes information possessed or controlled in any way by an agency." *Id.* cmt. The commentary also suggests that "the personal recollection of an agency employee would not be a 'government record' [7] but his handwritten notes summarizing an event or conversation would." *Id.*

▮ However, although legislative history of the UIPA indicates an "intent that commentary to the UIPC guide the interpretation of similar provisions in the UIPA[,]" this court has held that the UIPA "nowhere imposes an affirmative obligation" upon a government agency "to maintain records." *SHOPO*, 83 Hawai'i at 392 n. 8, 393, 927 P.2d at 400 n. 8, 401. Instead, "the UIPA requires agencies to provide access to those records that are actually maintained." *Id.* at 393, 927 P.2d at 401. "The United States Supreme Court, interpreting the federal [Freedom of Information Act ('FOIA')] in *Kissinger v. Reporters Comm. for Freedom of the Press*, [445 U.S. 136, 100 S.Ct. 960, 63 L.Ed.2d 267 (1980)], reached the same conclusion." *Id.* at 393–94, 927 P.2d at 401–02 ("The [FOIA] does not obligate agencies to create or retain documents; it only obligates them to provide access to those which it in fact has created and retained." (Block format and citation omitted.)). Therefore, should we construe HRS § 92F–11 as imposing a requirement upon a government agency to "maintain" a report the moment that the agency receives it, we would be imposing an "affirmative obligation" upon the agency, which is contrary to this court's conclusion that the UIPA simply requires *access* to those records the agency has in fact "maintained." *See id.* at 393, 927 P.2d at 401. Accordingly, whether the engineering reports are "actually maintained" by DPP depends on whether DPP "chose[ ] to retain possession or control[ ]" of the records. *See id.* at 394, 927 P.2d at 402 (quoting *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 151–52, 100 S.Ct. 960, 63 L.Ed.2d 267 (1980)) (block format omitted).

---

7. We note that the UIPC defines a "[g]overnment record" to mean "information maintained by an agency in written, aural, visual, electronic or other physical form." UIPC § 1–105.

This interpretation is consistent with the ordinary meaning of the word "maintain." As mentioned above, the word "maintain" is undefined by HRS Chapter 92F. In light of HRS Chapter 92F's silence, this court "may resort to legal or other well accepted dictionaries as one way to determine the ordinary meaning of certain terms not statutorily defined." *Leslie v. Bd. of Appeals of the County of Hawai'i,* 109 Hawai'i 384, 393, 126 P.3d 1071, 1080 (2006) (quoting *Schefke v. Reliable Collection Agency, Ltd.,* 96 Hawai'i 408, 424, 32 P.3d 52, 68 (2001)) (quotation marks omitted). Black's Law Dictionary defines the word "maintain" as "[t]o continue (something)" or "[t]o continue in possession of (property, etc.)." *Black's Law Dictionary* 973 (8th ed.2004). Similarly, it is also said that the word "maintain" means "to keep in existence or continuance; preserve; retain." *The Random House College Dictionary* 807 (rev. ed.1979).

In this case, DPP "chose[ ] to retain possession or control" of the engineering reports through its decision to either accept or reject each report submitted to it in connection with Laumaka's subdivision application. To reiterate, the circuit court determined that any unaccepted reports were returned to Laumaka, and there was a lack of evidence suggesting that Appellees "maintained" any reports or copies of the reports that were unaccepted by DPP. On March 17, 2006, DPP "accepted" a geotechnical report prepared for the subject property by Masa Fujioka and Associates. On April 20, 2006, DPP found that a "Preliminary Drainage Report" prepared by Mitsunaga and Associates for the subject property was "acceptable." These accepted reports were made available to the public on the same day they were accepted. In light of the analysis above, DPP's acceptance of these reports demonstrates its choice to "maintain" or "retain possession or control" over the reports. *See SHOPO,* 83 Hawai'i at 394, 927 P.2d at 402. Further, there is a lack of evidence in the record on appeal to suggest that DPP withheld disclosure of any other accepted "government report," or, as explained above, "information maintained by" it in any "physical form." *See* HRS §§ 92F–

3, –11; *SHOPO,* 83 Hawai'i at 393, 927 P.2d at 401. Accordingly, we hold that the circuit court correctly determined that, pursuant to the UIPA, the engineering reports submitted to DPP in connection with Laumaka's subdivision application did not constitute "government records" prior to their acceptance by DPP.[8]

### B. The Circuit Court Erred In Its Determination That Appellees Violated Neither Its Administrative Rules Nor the HAPA.

The circuit court found "that the actions of DPP was [sic] consistent with [Appellees'] departmental policy and procedures. Once DPP had accepted the consultants' reports, these reports were immediately made available to the public." Further to this point, the circuit court found that counsel for DPP had "represented that all reports or documents relating to the subdivision have been turned over to [NVA] immediately after DPP had accepted the reports or documents." "Conversely," the circuit court determined that the unaccepted reports "were not kept within DPP files, DPP did not maintain a copy of the reports[,] and DPP returned these reports to [Laumaka]." Moreover, NVA "fail[ed] to present evidence to prove that DPP maintained or withheld reports inconsistent with departmental policies or procedures." The court thus determined that "[t]he DPP Rules are consistent with the UIPA and based on the ... above, there is no showing that the enactment of departmental rules had violated its own rules and procedures nor violated the HAPA."

"[I]nterpretation of a statute is a question of law which this court reviews *de novo.* Where the language of the statute is plain and unambiguous, our only duty is to give effect to its plain and obvious meaning." *Tamashiro v. Dep't of Human Servs.,* 112 Hawai'i 388, 398, 146 P.3d 103, 113 (2006) (brackets added) (citation and quotation marks omitted). "[T]he general principles of construction which apply to statutes also apply to administrative rules." *Brown v.*

8. In light of the foregoing disposition, consideration of whether the engineering reports fall un-

der the deliberative process exception to the UIPA is unnecessary.

*Thompson,* 91 Hawai'i 1, 9, 979 P.2d 586, 594 (1999).

Section 1–2(b) of DPP's "Rules of Practice and Procedure" ("DPP's Rules") states, as follows:

All department files are public records and may be examined upon request. Permit files include applications, director's reports, maps and drawings, written testimony, correspondence, tape recordings or written minutes of proceedings, orders, and all other pertinent documents.

Section 1–3(b)(2) of DPP's Rules states, as follows: "In its role as the [central coordinating agency], the department, in coopernation [sic] with other city, state, and federal agencies, shall ... [m]aintain and update a master file of building permit applications, subdivision applications, land use permits, and land use designations on Oahu." The word "department" is defined under section 1–1 of DPP's Rules as "the department of planning and permitting, City and County of Honolulu." All other words are undefined.

Adduced from counsel at a hearing on NVA's motions for partial summary judgment, DPP's administrative process prior to its approval of an engineering report appears to be as follows:

[T]he records policy of DPP is basically to have a subdivision application, the consultants turn in their draft reports, and during this process the City may write comments upon the actual report. Then it returns that report to the consultant and/or developer for further clarification or further supplementation. The City does not retain a copy of the report as it exchanges it back to the consultant or to the developer and—until the City formally accepts the report, once it has been satisfied that all of its questions and inquiries have been answered. At that time it formally ... accepts a report and at that time, only at that time is the public able to access these reports.

NVA maintains that DPP's practice of publicly disclosing engineering reports only after they have been deemed acceptable consti-

tutes improper rule making in violation of HRS § 91–1(4) (1993), and is contrary to its administrative rules.[9]

HRS § 91–1(4) defines a "rule" as "each agency statement of general or particular applicability and future effect that implements, interprets, or prescribes law or policy, or describes the organization, procedure, or practice requirements of any agency." However, "[t]he term does not include regulations concerning only the internal management of an agency and not affecting private rights of or procedures available to the public, nor does the term include declaratory rulings issued pursuant to section 91–8, nor intraagency memoranda." HRS § 91–1(4).

In this light, "each agency shall[ ] ... make available for public inspection all rules and written statements of policy or interpretation formulated, adopted, or used by the agency in the discharge of its functions." HRS § 91–2(a)(3) (1993). Moreover, "[n]o agency rule[ ] ... shall be valid or effective against any person or party, nor may it be invoked by the agency for any purpose, until it has been published or made available for public inspection as herein required, except where a person has actual knowledge thereof." HRS § 91–2(b).

■ In this case, DPP's Rules clearly require DPP to "maintain and update a master file of ... subdivision applications." DPP's Rules § 1–3(b)(2). Further, DPP's Rules indicate that this "file" includes the subdivision application itself, all accompanying engineering reports and written comments thereon, "and all other pertinent documents." *See* DPP's Rules § 1–2(b) ("Permit files include applications, ... correspondence, ... and all other pertinent documents."). Because section 1–2(b) of DPP's Rules unambiguously states that "[a]ll department files are public records and may be examined upon request[,]" Laumaka's "file," "maintain[ed] and update[d]" by DPP "as the [central coordinating agency]," constitutes a "public record[ ] and may be examined upon request." *See* DPP's Rules §§ 1–2(b), 1–3(b)(2). Construed in this manner, we hold that DPP violated its Rules by refusing to

9. We note that Appellees' answering brief fails to "controvert" this point of error and argument raised by NVA in its opening brief. *See* HRAP Rule 28(c).

make available to the public any unaccepted engineering reports and written comments thereon. .

Consequently, DPP's policy of refusing to publicly disclose these engineering reports prior to their approval constitutes a "rule" inasmuch as it "affect[s]" the "procedures available to the public," and "implements, interprets, or prescribes ... policy, or describes the ... procedure[ ] or practice requirements of" DPP. *See* HRS § 91–1(4).

Further, the record on appeal fails to reflect and, as noted above, Appellees have not argued that DPP's policy was "published or made available for public inspection[,]" or that NVA had "actual knowledge" of the policy prior to its initial request. *See* HRS § 91–2(b). Because .DPP has not complied with the mandated requirements of HRS Chapter 91, DPP was proscribed from "invok[ing]" its policy "for any purpose." *See id.* Therefore, we also hold that the circuit court erred in its determination that DPP did not violate the HAPA by refusing to publicly disclose any unaccepted engineering reports and written comments thereon. Accordingly, all of DPP's "files," which includes the Laumaka "file," are "public records and may be examined upon request." *See* DPP's Rules § 1–2(b).

### C. Laumaka's Subdivision Does Not "Propose the Use Of State Or County Lands."

NVA asserts that the circuit court erred in its determination that HEPA is inapplicable.[10] The circuit court ultimately found that the following aspects of Laumaka's proposed subdivision did not "[p]ropose the use of state or county lands": (1) a drainage system

located within the boundaries of Laumaka's subdivision will connect to a proposed extension of Puu Paka Drive without going beneath, across, or passing over state or county land, (2) existing county sewage lines will connect to drain pipes located within Laumaka's proposed subdivision without going beneath, across, or passing over state or county land, (3) an easement of 0.130 acres owned by the "Territory of Hawaii" runs adjacent to and through a portion of Laumaka's proposed subdivision, and (4) "the undertaking of rockfall reduction strategies or inspection or protective measure in the [state-owned] forest" located directly above the Laumaka subdivision.

HEPA's purpose is expressed through HRS § 343–1 (1993), as follows:

> The legislature finds that the quality of humanity's environment is critical to humanity's well being, that humanity's activities have broad and profound effects upon the interrelations of all components of the environment, and that an environmental review process will integrate the review of environmental concerns with existing planning processes of the State and counties and alert decision makers to significant environmental effects which may result from the implementation of certain actions. The legislature further finds that the process of reviewing environmental effects is desirable because environmental consciousness is enhanced, cooperation and coordination are encouraged, and public participation during the review process benefits all parties involved and society as a whole.

> It is the purpose of this chapter to establish a system of environmental review which will ensure that environmental con-

---

**10.** NVA asserts that Appellees admitted that an EA should be prepared when Jeffrey Lee ("Lee"), a staff planner employed by the City and County of Honolulu, completed an "Environmental Checklist" for Puu Paka DP, LLC's subdivision application in January 2005. In this checklist, Lee placed a checkmark in a box that stated that HEPA "[a]pplies as checked[.]" Immediately below this box are seven other boxes representing choices explaining why HEPA applies, which includes a box labeled "State/County Lands/ Funds." Lee did not place a checkmark in any of these boxes. In a signed declaration dated May 24, 2006, Lee declared that he "mistakenly

checked the box labeled 'Applies as checked,'" and instead "meant to check the box labeled 'Does not apply.'"

NVA claims that Lee's purported admission creates a genuine issue of material fact that should have precluded summary judgment on the environmental assessment issue. However, for reasons discussed herein, the following discussion ultimately holds that, as a matter of law, certain aspects of Laumaka's subdivision does not propose the "use" of state or county lands. Therefore, whether a genuine issue of material fact exists as to Lee's purported admission is inconsequential to the resolution of this issue.

cerns are given appropriate consideration in decision making along with economic and technical considerations.

As explained by this court:

HEPA is triggered whenever an agency or an applicant proposes an action which falls within one of eight categories set forth in HRS § 343–5(a) (1993). This section unequivocally states that "an environmental assessment *shall* be required" for these actions. HRS § 343–5(a) (emphasis added). The general rule that environmental assessments are required for all proposed actions is qualified by HRS § 343–6(a)(7) (1993), which provides for exemptions for certain classes of actions, which, "because they will probably have minimal or no significant effects on the environment, are declared exempt from the preparation of an assessment." HRS § 343–6(a)(7).

*Kahana Sunset Owners Ass'n v. County of Maui*, 86 Hawai'i 66, 70, 947 P.2d 378, 382 (1997). This case involves interpretation and application of HRS § 343–5(a)(*l*) (Supp. 2007), which mandates, in pertinent part, that "[e]xcept as otherwise provided, an environmental assessment shall be required for actions that[ ] . . . [p]ropose the use of state or county lands. . . ."

 NVA asserts that an EA must be completed because Laumaka's proposed subdivision will require use of and connection to the county's drainage and sewer systems. NVA also asserts that an EA must be completed "[s]o long as there is a 'use' of city or state lands," without regard to "the size of the 'use' and comparisons to the scope and size of the overall project." We disagree.

In *Kahana Sunset Owners Ass'n*, the defendant filed an application for a Special Management Area ("SMA") permit that was preparatory to development of Napilihau Vil-

lages I, II, III, and IV on the island of Maui. 86 Hawai'i at 68, 947 P.2d at 380. The proposed development would install a new, thirty-six-inch drainage line beneath a public street, which then connected to an existing twenty-four-inch culvert beneath a public highway. *Id.* at 71, 947 P.2d at 383. It was undisputed between the parties that this constituted a "use of state or county lands." *Id.* (quoting HRS § 343–5(a)(1)) (quotation marks omitted).

The Maui Planning Commission eventually granted the defendant's SMA permit, and determined that the completion of an EA was not required. *Id.* at 68, 947 P.2d at 380. The circuit court affirmed the Commission's decision. *Id.* On appeal to this court, the plaintiff asserted, *inter alia*, that if an EA is required, "the document must address the environmental effects of the entire proposed development, not just the drainage system." *Id.* at 74, 947 P.2d at 386. Pursuant to Hawai'i Administrative Rules ("HAR") § 11–200–7,[11] this court held that the plaintiff's "assertion is correct[,]" inasmuch as "[i]solating only that particular component of the development for environmental assessment would be improper segmentation of the project." *Id.* Indeed, "the action proposed" in *Kahana Sunset Owners Ass'n* "is the entire Napilihau development," and "the proposed drainage system is part of the larger project and is a 'necessary precedent' for the development." *Id.* (citation omitted).

In *Citizens for the Protection of the North Kohala Coastline v. County of Hawai'i*, 91 Hawai'i 94, 103, 979 P.2d 1120, 1129 (1999) ("*Citizens*"), the plaintiff asserted that the proposed construction of two underpasses below a public highway constituted a "use" of state lands. These underpasses were to be used for golf carts and maintenance vehicles to travel to portions of a golf course situated

---

11. HAR § 11–200–7 provides, as follows:
 A group of actions proposed by an agency or an applicant shall be treated as a single action when:
 (1) The component actions are phases or increments of a larger total undertaking;
 (2) An individual project is a necessary precedent for a larger project;
 (3) An individual project represents a commitment to a larger project; or

 (4) The actions in question are essentially identical and a single statement will adequately address the impacts of each individual action and those of the group of actions as a whole.
 (Emphases added.) HAR § 11–200–2 defines an "action" to mean "any program or project to be initiated by an agency or applicant."

on either side of the public highway. *Id.* The defendant asserted, *inter alia,* that environmental review under HRS chapter 343 was unnecessary because the construction of two underpasses under a state highway did not constitute a "use" of state lands. *Id.* In light of *Kahana Sunset Owners Ass'n.* this court disagreed with the defendant inasmuch as it was "clear" that the construction would constitute "use of state lands for purposes of HRS § 343-5(a)(1) . . . ." *Id.* In contrast, this court noted that "the potential use of" a public highway that led to the project did not constitute a "use" of state land. *Id.* at 103 n. 8, 979 P.2d at 1129 n. 8.

In *Sierra Club v. Office of Planning, State of Hawai'i,* 109 Hawai'i 411, 413, 126 P.3d 1098, 1100 (2006), Castle & Cooke and Pacific Health filed a petition with the Land Use Commission to reclassify certain land from an agricultural district to an urban district so that Castle & Cooke could develop a project consisting of thousands of homes, a commercial center, elementary school, park, church/day care, recreation center, and the Pacific Health Center.[12] The "Project's" "Infrastructural Report" stated that Castle & Cooke would eventually construct a thirty-six-inch sewage line that would transport wastewater from the project to the Waipahu Wastewater Treatment Plant, as well as a water line to provide water to the "Project." *Id.* Construction of these lines would require Castle & Cooke to tunnel beneath several public highways. *Id.*

The defendants asserted, *inter alia,* that the petition for reclassification did not trigger HRS § 343-5's EA requirement because the petition did not constitute an "action" within the meaning of HRS Chapter 343. *Id.* at 415, 126 P.3d at 1102. This court disagreed with the defendant's assertion because, in light of HRS § 343-5(a) and HRS § 343-2

(Supp.2005),[13] the "Project" itself, rather than the petition, was the "action" contemplated by the plain language of HRS § 343-5(a). *Id.* This court also determined that the "Project" proposed the "use" of state lands "inasmuch as the construction of the sewage and water transmission lines will require tunneling beneath state highways." *Id.*

It is undisputed that the "action" in this case is Laumaka's subdivision. To reiterate, Laumaka's subdivision consists of approximately 45.9 acres of steep mountainside land in Nu'uanu valley. The property is located above or adjacent to Puu Paka Drive, Kama'aina Drive and Place, Kahawalu Drive, and Ragsdale Drive on the southern edge of the valley. The property had been zoned for residential use since approximately 1943, and is currently undeveloped. The development plan proposes the creation of nine large subdivision lots on the property. Each lot has the capability of supporting two homes, inasmuch as each of the nine lots has more than double the required minimum zoning lot size.

According to the "Preliminary Drainage Report" prepared by Mitsunaga and Associates, several detention basins will be constructed within Laumaka's subdivision to limit surface runoff "to predevelopment conditions." The purpose of these basins is to detain any increase in storm water discharge by reducing the flows upstream of the roads "due to the addition of impervious areas including building structures, driveways and the extension of existing streets."

The development plan calls for an extension of Puu Paka Drive into Laumaka's subdivision. This extension ends in a cul-de-sac, and the development plan indicates that it may be dedicated to the county sometime in the future. Apparently, the "Puu Paka Drive drainage system" involves connecting basin numbers 6, 7, and 8[14] to the cul-de-sac

---

12. This was defined collectively by this court as the "Project." *Sierra Club,* 109 Hawai'i at 413, 126 P.3d at 1100.

13. An "action" is defined as "any program or project to be initiated by any agency or applicant." HRS § 343-2. "Agency" is defined as "any department, office, board, or commission of the state or county government which is a part of the executive branch of that government." *Id.* "Applicant" is defined as "any person who, pur-

suant to statute, ordinance, or rule, officially requests approval for a proposed action." *Id.*

14. There appears to be a total of nine detention basins that comprise the drainage system in Laumaka's subdivision, which are numbered "1" through "9." The so-called "Puu Paka Drive drainage system" is a part of a larger drainage system within the subdivision, and includes only a few of these detention basins.

portion of the proposed extension of Puu Paka Drive. Basin numbers 6 and 7 connect to the "Puu Paka Drive drainage system" via a drain pipe within a drainage easement in favor of one of the nine lots within the subdivision. Basin number 8 connects directly with the "Puu Paka Drive drainage system." This connection is not within any easement. The drainage system then discharges through an existing thirty-inch drain line at the bottom of the property, which appears to be within an easement in favor of the City and County of Honolulu.

NVA is essentially asserting that any "use of state or county lands[,]" no matter what the nature of that "use" may be, is sufficient to satisfy HRS § 343–5(a)(1)'s requirement that an "action[ ]" "[p]ropose the use of state or county lands...." The word "use" is undefined within HRS Chapter 343. The "ordinary meaning" of the word "use" is "to employ for some purpose; put into service; make use of[.]" *The Random House College Dictionary* 1448; *see Leslie*, 109 Hawai'i at 393, 126 P.3d at 1080. In light of this meaning, the word "use" could be construed to apply to any "use" of state or county land, no matter what or how benign that "use" may be.

However, this interpretation flies in the face of the fact that this court dismissed the plaintiff's argument in *Citizens* that the "potential use of" a public highway leading to the development project constitutes a "use" of state land. 91 Hawai'i at 103 n. 8, 979 P.2d at 1129 n. 8. Clearly, this court has recognized that the boundaries of the meaning of the word "use," as contemplated by HRS § 343–5(a)(1), is not unlimited in possibilities. *See id.* Therefore, we decline to apply the ordinary meaning of the word "use" in interpretation of HRS § 343–5(a)(1).

 "Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called in aid to explain what is doubtful in another." HRS § 1–16 (1993). Further, "[t]his court must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose." *Kahana Sunset Owners Ass'n*, 86 Hawai'i at 71, 947 P.2d at 383.

HEPA's purpose is "to establish a system of environmental review which will ensure that environmental concerns are given appropriate consideration in decision making along with economic and technical considerations." HRS § 343–1. This court has observed that the "purpose of preparing an environmental assessment is to provide the agency and any concerned member of the public with the information necessary to evaluate the potential environmental effects of a proposed action." *Kahana Sunset Owners Ass'n*, 86 Hawai'i at 72, 947 P.2d at 384. However, this court's decisions interpreting HRS § 343–5(a)(1)'s requirement of "use of state or county lands" have so far been limited to projects that require tunneling or construction beneath state or county land. *See Sierra Club*, 109 Hawai'i at 415–16, 126 P.3d at 1102–03; *Citizens*, 91 Hawai'i at 105, 979 P.2d at 1131; *Kahana Sunset Owners Ass'n*, 86 Hawai'i at 71, 947 P.2d at 383. This court has not held that merely connecting privately-owned drainage and sewage lines to a state or county-owned drainage and sewage system is sufficient to satisfy HEPA's requirement of "use of state or county lands."

Indeed, construing the word "use" in a manner suggested by NVA could result in countless possibilities of "uses" that would fall within the scope of the Hawai'i Environmental Policy Act, which we believe was not intended by the legislature. *See* HRS § 343–1; *see also Citizens*, 91 Hawai'i at 103 n. 8, 979 P.2d at 1129 n. 8. Moreover, were we to construe HEPA's requirement of "use of state or county lands" in a manner suggested by NVA, we would be misconstruing the weight of our prior case law, which consisted of facts that illustrated a "use" that was more than merely a connection to state or county "lands." For example, the "use" in *Kahana Sunset Owners Ass'n* was the fact that the proposed development would install a new, thirty-six-inch drainage line beneath, and not merely in connection to, a public street. 86 Hawai'i at 71, 947 P.2d at 383. Similarly, the "use" in *Citizens* was the fact that the two underpasses would require construction beneath a state highway, rather than merely a connection to the land beneath the highway. 91 Hawai'i at 103, 979 P.2d at

1129. Also similar is the "use" in *Sierra Club*, where construction of the "Project's" sewage and water transmission lines required tunneling beneath, rather than merely a connection with, multiple state highways. 109 Hawai'i at 415–16, 126 P.3d at 1102–03.

Although NVA's concern regarding the environmental risks posed by Laumaka's subdivision is understandable, we must remain mindful of our duties to follow the law. Because the record, at best, indicates that Laumaka's drainage and sewer lines will merely connect to the "Puu Paka Drive drainage system" and existing county sewer lines, the instant case is distinguishable from *Kahana Sunset Owners Ass'n*, *Citizens*, and *Sierra Club*. Therefore, in light of the foregoing analysis, we decline to extend the meaning of the word "use" to the circumstances of this case, where the evidence indicates that Laumaka's drainage and sewer lines merely connect to the "Puu Paka Drive drainage system" and existing county lines without requiring construction or tunneling beneath state or county lands. *See* HRS § 343–1; *Sierra Club*, 109 Hawai'i at 415–16, 126 P.3d at 1102–03; *Citizens*, 91 Hawai'i at 103, 979 P.2d at 1129; *Kahana Sunset Owners Ass'n*, 86 Hawai'i at 71, 947 P.2d at 383; *see also Citizens*, 91 Hawai'i at 103 n. 8, 979 P.2d at 1129 n. 8. Accordingly, we hold that the circuit court did not err in its determination that there is no "use" of state or county land because the "detention basins are connected and routed through the Puu Paka Drive drainage system," and the drainage line will not require tunneling or construction beneath state or county lands. We also hold that the circuit court correctly determined that connecting the county's existing sewage lines to Laumaka's lines did not constitute a "use" of county land because Laumaka's sewage lines would not require tunneling or construction beneath state or county land.

 Additionally, it is well established that a party that moves for summary judgment has the burden "to show the absence of any genuine issue as to all material facts, which, under applicable principles of substantive law, entitles the moving party to judgment as a matter of law." *Jou v. Dai–Tokyo*

*Royal State Ins. Co.*, 116 Hawai'i 159, 164, 172 P.3d 471, 476 (2007) (block format and citation omitted). "[T]his burden has two components":

> First, the moving party has the burden of producing support for its claim that: (1) no genuine issue of material facts exists with respect to the essential elements of the claim or defense which the motion seeks to establish or which the motion questions; and (2) based on the undisputed facts, it is entitled to summary judgment as a matter of law. Only when the moving party satisfies its initial burden of production does the burden shift to the non-moving party to respond to the motion for summary judgment and demonstrate specific facts, as opposed to general allegations, that present a genuine issue worthy of trial.
>
> Second, the moving party bears the ultimate burden of persuasion. This burden always remains with the moving party and requires the moving party to convince the court that no genuine issue of material fact exists and that the moving part [sic] is entitled to summary judgment as a matter of law.

*Id.* (quoting *French v. Hawaii Pizza Hut, Inc.*, 105 Hawai'i 462, 470, 99 P.3d 1046, 1054 (2004)).

NVA filed a motion for partial summary judgment on the HEPA issue on October 27, 2006. However, in its findings of fact, conclusions of law, and order denying NVA's motion for partial summary, the circuit court determined that NVA "failed to [make any] show[ing] beyond the fact that the existing county sewage lines will connect to the drain pipes on the Laumaka subdivision." As a result, the court could not find any "use of state or county lands" because the mere fact that Laumaka's drainage and sewage lines "will connect to a county line, without actually going beneath, across, or passing over a state or county land will not trigger the" EA requirement.

In its opening brief, NVA avers that "[t]he City will be required to dig under Puu Paka to provide for the sewer connections." However, NVA does not include a citation to the record to support its assertion. Moreover, in

its opening brief, NVA neither quoted, in its points of error section, the portion of the circuit court's finding that NVA "failed" to carry its burden in its motion for partial summary judgment, nor argued or assigned as error that such a finding was clearly erroneous. *See* HRAP Rule 28(b)(4)(C) (instructing that an opening brief shall contain a points of error section, which "shall also include the following: ... (C) when the point involves a finding or conclusion of the court or agency, a quotation of the finding or conclusion urged as error[ ]"). Consequently, we hold that the circuit court correctly determined that NVA has not successfully carried its burden on its motion for partial summary judgment.

██ NVA also claims that Laumaka will be required to "use" state land in order to complete a "slope stability analysis to determine the risks of slope failure and rockfalls" and "perform appropriate mitigation measures." In enacting HEPA, Hawaii's legislature found that "the process of reviewing environmental effects is desirable because environmental consciousness is enhanced, cooperation and coordination are encouraged, and public participation during the review process benefits all parties involved and society as a whole." HRS § 343-1. Laumaka's subdivision is located at the base of a heavily forested mountainside, which is owned by the state. The state Department of Land and Natural Resources sent DPP a letter dated April 17, 2006, which recommended that DPP require Laumaka to perform a "slope stability analysis" and "appropriate mitigation measures to address the risks identified by the study and other known hazards...." However, for reasons · discussed above, NVA's argument is unpersuasive because the "slope stability analysis" is not a "use" contemplated by HRS § 343-5(a)(1). *See* HRS § 343-1; *Sierra Club,* 109 Hawai'i at 415–16, 126 P.3d at 1102–03; *Citizens,* 91 Hawai'i at

103, 979 P.2d at 1129; *Kahana Sunset Owners Ass'n,* 86 Hawai'i at 71, 947 P.2d at 383; *see also Citizens,* 91 Hawai'i at 103 n. 8, 979 P.2d at 1129 n. 8.

██ Finally, the circuit court found that there is an easement of 0.130 acres that runs adjacent to and through a portion of the Laumaka subdivision, which is a "hiking right of way" owned by the "Territory of Hawaii." NVA appears to assert that Laumaka's subdivision will "use" state land simply because this easement exists within Laumaka's subdivision. However, NVA does not point to anything in the record indicating that Laumaka's subdivision will in fact "use" the easement in any way. Because this easement merely exists within Laumaka's subdivision, NVA's assertion is without merit.[15]

**D. NVA Has Not Successfully Carried Its Burden Of Showing Irreparable Damage For a Preliminary Injunction.**

In the circuit court, NVA sought a preliminary-injunction preventing DPP from further review and processing of Laumaka's subdivision application. NVA also sought an order requiring DPP to turn over all engineering reports pending review and evaluation for acceptance by DPP, including any comments thereon. The circuit court ultimately determined that NVA unsuccessfully met its burden to warrant the issuance of a preliminary injunction for the following reasons: (1) the engineering reports and comments thereon did not constitute "government records" under HRS § 92F-3; (2) even · if DPP kept copies of any unaccepted reports, these reports and DPP's written comments thereon would fall under the deliberative process exception to the UIPA; (3) NVA failed to timely appeal DPP's denial of access to either the circuit court or the state Office of Information Practices pursuant to HRS § 92F-15(a) ·(1993)[16] and HRS § 92F-15.5

---

15. We note that Appellees contend that state or county easements cannot be equated with state or county "lands" for purposes of HEPA. On the other hand, NVA relies on defining the words "easement" and "land"· in support of its assertion that an easement is akin to "land." In light of the foregoing disposition, consideration of this issue is unnecessary.

16. HRS § 92F-15(a), which is entitled "Judicial Enforcement," provides · that "[a] person aggrieved by a denial of access to a government record may bring an action against the agency at any time within two years after the agency denial to compel disclosure."

(1993);[17] (4) plans and reports that have not been accepted by DPP and not disclosed to NVA are irrelevant to NVA's claim of irreparable harm inasmuch as these reports are not documents that DPP relies upon when approving subdivision applications; and (5) assuming, *arguendo,* that disclosure of the reports is required, NVA unsuccessfully established its claim that it will suffer irreparable harm if the preliminary motion is not granted. On appeal, NVA asserts that, in light of its foregoing points of error, the circuit court erred when it denied its motion for a preliminary injunction because it should have been given the opportunity to review and comment upon the engineering reports prior to DPP's acceptance of them.[18]

▆▆▆ "The grant of a motion for a preliminary injunction is within the discretion of the [trial] court." *Rapp v. Disciplinary Bd. of Hawai'i Supreme Court,* 916 F.Supp. 1525, 1538 (D.Haw.1996); *Consolidated Amusement Co. v. Hughes,* 22 Haw. 550, 554 (Hawai'i Terr.1915) ("[T]he right to a temporary injunction . . . rests in the discretion of the trial court . . . but any abuse of such discretion, either in granting or refusing, will be ground for reversal on appeal."). Accordingly, whether the trial court erred in either granting or denying a motion for a preliminary injunction is reviewed under the abuse of discretion standard. *See Mottl v. Miyahira,* 95 Hawai'i 381, 384 n. 5, 23 P.3d 716, 719 n. 5 (2001) ("The United States Circuit Court of Appeals for the Ninth Circuit affirmed, holding that the federal district court did not abuse its discretion in issuing the preliminary injunction. . . ."); *Consolidated Amusement Co.,* 22 Haw. at 554.

▆▆▆ "The test for granting or denying temporary injunctive relief is three-fold: (1) whether the plaintiff is likely to prevail on the merits; (2) whether the balance of irreparable damage favors the issuance of a temporary injunction; and (3) whether the public interest supports granting an injunction."

*Office of Hawaiian Affairs v. Hous. & Cmty. Dev. Corp. of Hawai'i,* 117 Hawai'i 174, 211, 177 P.3d 884, 922 (2008); *see Life of the Land v. Ariyoshi,* 59 Haw. 156, 158, 577 P.2d 1116, 1118 (1978) (same). "[T]he more the balance of irreparable damage favors issuance of the injunction, the less the party seeking the injunction has to show the likelihood of success on the merits." *Office of Hawaiian Affairs,* 117 Hawai'i at 211–12, 177 P.3d at 922 (citation and quotation marks omitted).

In its order denying NVA's motion for preliminary injunction, the circuit court found, contrary to NVA's claim that it was unable to meaningfully participate in the planning and permitting process, that NVA had, in fact, participated in the governmental process and had voiced its concerns about Laumaka's subdivision. For example, the circuit court found that NVA had contacted and/or had discussions with Appellees Henry Eng and David Tanoue, the Honolulu City Council and its members, the Mayor of the City and County of Honolulu, the Nuuanu–Punchbowl Neighborhood Board, and state legislators. The circuit court also found that DPP had made available for review and copying all accepted engineering reports.

Additionally, in its findings of fact and conclusions of law, the circuit court found that the unaccepted reports were returned to Laumaka, and DPP did not retain a copy of the unaccepted reports. Further, Laumaka filed a "Stipulation Re Production Of Documents To Plaintiff" on November 13, 2006, wherein Laumaka and NVA stipulated that on or before April 28, 2006, Laumaka made available to NVA "for review and copying all prior drafts of the accepted reports and the . . . comments to said reports to the extent maintained by Laumaka, its agents, and its consultants[.]" It was also stipulated that NVA "agree[d] that the issue of the production of the reports and the . . . comments

---

**17.** HRS § 92F–15.5(a), which is entitled "Alternative method to appeal a denial of access," provides, in pertinent part, that "[w]hen an agency denies a person access to a government record, the person may appeal the denial to the office of information practices in accordance

with rules adopted pursuant to section 92F–42(12)."

**18.** We note that Appellees, in their answering brief, did not provide a counter-argument to this point of error raised by NVA.

thereto is, therefore, moot as to the documents provided."

At the hearing on Plaintiff's motions for summary judgment, the following exchange took place:

THE COURT: Can you articulate what records you have not received? It's my understanding from the last round of proceedings that whatever the City had they had disclosed to your clients and that [Laumaka] by way of stipulation with [NVA] had provided the records that the City didn't keep, including the comments. What records in addition to that have you not received?

[NVA]: I think there's two things that we would say we haven't received yet and that's—we haven't received the records directly from the City.

THE COURT: Well, the records that you received from [Laumaka] would be the records that the City doesn't have. Those are the records with the comments.

. . . .

[NVA]: Yeah. I think that goes to the core problem that we have. We're not really certain what else there may be out there in existence because there is this relinquishing of possession between the City to [Laumaka]. And so one of our concerns is that perhaps, because the City hasn't yet verified it or certified it, that it's not entirely accurate or complete.

 Notwithstanding its argument on appeal, NVA has not pointed to anything in the record suggesting that an engineering report, whether accepted or unaccepted by DPP, is being withheld from public disclosure. Therefore, we hold that NVA has not successfully carried its burden of showing irreparable damage to warrant the issuance of a preliminary injunction.[19]

## IV. CONCLUSION

Based upon the foregoing analysis, we affirm in part and reverse in part the circuit court's May 17, 2007 amended final judgment.

Concurring Opinion by ACOBA, J.

I concur in the disposition of this case on the grounds following. With respect to "the Uniform Information Practices Act ('the UIPA'), . . . Hawaii Revised Statutes (HRS) [c]hapter 92F . . . [, and whether] 'documents provided by private developers to [a government agency] become public records," majority opinion at 93, 194 P.3d at 534, "section 1–2(b) of the [Rules of the Department of Planning and Permitting of the City and County of Honolulu (DPP)] unambiguously states that 'all department files are public records and may be examined upon request[,]' " majority opinion at 99, 194 P.3d at 540 (brackets omitted). Inasmuch as rules are intended to implement statutes, *see Coon v. City and County of Honolulu*, 98 Hawai'i 233, 251, 47 P.3d 348, 366 (2002) (stating that "it is axiomatic that an administrative rule cannot contradict or conflict with the statute it attempts to implement") (internal quotation marks and citation omitted), all DPP files are public records and must be disclosed to Plaintiff–Appellant Nuuanu Valley Association by Defendant–Appellee City and County of Honolulu.

A "government record" refers to "information maintained by an agency[.]" HRS § 92F–3. The majority states that records are "maintained" by the DPP if the "DPP chose to retain possession or control of the records." Majority opinion at 97, 194 P.3d at 538 (internal quotation marks and citation omitted). However, in construing the term "maintain," I would not foreclose from judicial review situations where documents are not retained in order to circumvent the public disclosure requirements of the UIPA.

As to whether the "development of the Laumaka subdivision will result in the 'use' of state or county lands thereby triggering the environmental assessment ('EA') requirement of the Hawaii Environmental Policy Act ('HEPA')," majority opinion at 93, 194 P.3d

---

**19.** We note that NVA points to several additional plans and reports that may be required to be submitted by Laumaka to DPP as a result of DPP's tentative approval of the proposed subdivision. In light of the foregoing disposition, Appellees must make these plans and reports available for examination when received and "upon request." *See* DPP's Rules § 1–2(b).

at 534, in my view there was a lack of evidence as to whether the subdivision hookup to the sewer system would be constructed under state or county land. The proposed Puu Paka Drive roadway extension under which the hookup would apparently be constructed has not yet been dedicated to the state or county as a public street. *See Sierra Club v. Office of Planning, State of Hawai'i*, 109 Hawai'i 411, 413, 126 P.3d 1098, 1100 (2006) (holding that the proposed construction of sewage and water lines running beneath public highways was a "use" of state lands requiring an EA "inasmuch as the construction of the sewage and water transmission lines will require tunneling beneath state highways"); *Citizens for the Protection of the N. Kohala Coastline v. County of Hawai'i*, 91 Hawai'i 94, 103, 979 P.2d 1120, 1129 (1999) (holding that proposed construction of two underpasses beneath a public highway was a "use of state or county lands" under HRS § 343–5(a)(1)); *Kahana Sunset Owners Ass'n v. County of Maui*, 86 Hawai'i 66, 71, 947 P.2d 378, 383 (1997) (involving a proposed development in which a new drainage line would be installed beneath a public street and the parties did not dispute that such construction constituted "use of state or county lands" within the meaning of HRS § 343–5(a)(1)).

## Motion for Reconsideration

### Civ. No. 06–01–0501

MOON, C.J., LEVINSON, NAKAYAMA, AND DUFFY, JJ. AND ACOBA, J., DISSENTING.

Plaintiff-Appellant Nuuana Valley Association's motion for reconsideration of the opinion filed on October 24, 2008, is hereby denied.

## Dissent by ACOBA, J.

I respectfully disagree and would grant the motion for reconsideration.