*** FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER ***

**Electronically Filed
Supreme Court
SCWC-12-0000266
15-APR-2015
08:39 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

MARK C. KELLBERG, Respondent/Plaintiff-Appellant,

vs.

CHRISTOPHER J. YUEN, in his capacity as Planning
Director, County of Hawai'i, and COUNTY OF HAWAI'I,
Petitioners/Defendants-Appellees.

SCWC-12-0000266

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-12-0000266; CIV. NO. 07-1-157)

APRIL 15, 2015

RECKTENWALD, C.J., NAKAYAMA, McKENNA, AND POLLACK, JJ., AND
CIRCUIT JUDGE GARIBALDI, IN PLACE OF WILSON, J., RECUSED

OPINION OF THE COURT BY RECKTENWALD, C.J.

This appeal requires us to consider the circumstances
under which a court must consider ordering the joinder of unnamed
parties under Rule 19 of the Hawai'i Rules of Civil Procedure

(HRCP).

A dispute arose when the Planning Director of the County of Hawaiʻi (Planning Director) approved the application of Michael Pruglo to consolidate and resubdivide the pre-existing lots on his 49-acre parcel of land in Ninole, Hawaiʻi (Subject Property). Respondent/plaintiff-appellant Mark C. Kellberg, who owned land adjacent to the Subject Property, objected to the approval because he claimed that the consolidation and resubdivision violated the Hawaiʻi County Subdivision Control Code, also known as Chapter 23 of the Hawaiʻi County Code (HCC), by increasing the number of lots on the Subject Property.

Kellberg later filed suit against petitioners/defendants-appellees, Christopher J. Yuen, in his capacity as Planning Director, and the County of Hawaiʻi (collectively, "County Defendants") in the Circuit Court of the Third Circuit.

Kellberg's complaint included six counts: Count I alleged that the Planning Director violated Chapter 23; Count II alleged that the Planning Director's violations of Chapter 23 rendered the subdivision void and entitled Kellberg to a declaratory judgment; Count III alleged that the County Defendants violated Kellberg's right to due process; Count IV alleged that the Planning Director abused his discretion by not

2

remedying the violations of Chapter 23 in a timely manner; Count V alleged that Kellberg was entitled to an injunction requiring the County Defendants to comply with Chapter 23; and Count VI alleged that Kellberg was entitled to monetary damages.  Kellberg prayed for a declaratory judgment that the subdivision was illegal and void under Chapter 23, a decree of specific performance for the Planning Director to bring the subdivision into compliance with Chapter 23, an injunction enjoining further subdivision of the Subject Property inconsistent with Chapter 23, monetary damages, and attorney's fees and costs.

The circuit court granted the County Defendants' motion for summary judgment on all counts.  Kellberg appealed, and the Intermediate Court of Appeals (ICA) vacated and remanded with instructions for the circuit court to dismiss the case for lack of subject matter jurisdiction because Kellberg failed to exhaust his administrative remedies.  Kellberg filed an application for a writ of certiorari, which was accepted.

This court held that the ICA erred "by holding that Kellberg's Complaint should have been dismissed for lack of subject matter jurisdiction based on the exhaustion doctrine." Kellberg v. Yuen, 131 Hawaiʻi 513, 534, 319 P.3d 432, 453 (2014) ("Kellberg I").  Accordingly, this court vacated the ICA's judgment and remanded to the ICA for consideration of the

3

remaining issues raised by Kellberg in his appeal.  Id. at 537, 319 P.3d at 456.

On remand, the ICA held that the Planning Director's approval of Pruglo's subdivision was invalid because it increased the number of lots, and therefore, Kellberg was entitled to judgment as a matter of law on Counts I and II.  The ICA further held that Counts III and IV were moot.  The ICA vacated the circuit court's judgment in favor of the County Defendants and remanded to the circuit court.

We accepted the County Defendants' timely application for a writ of certiorari, which presented the following questions:

> 1.    Where the undisputed evidence demonstrated the subject property consists of six, not seven lots, was it error to declare the subdivision invalid?
>
> 2.    Prior to vacating the judgment in favor of the County and entering judgment in favor of Kellberg, should the ICA have considered all of the County's arguments which were relied upon by the Circuit Court in granting summary judgment?
>
> 3.    When a party seeks to invalidate a subdivision must the owners of the subject property be joined as parties prior to voiding the subdivision?

As set forth below, the ICA erred in ruling on the merits of Kellberg's claims without addressing whether the owners of the lots within the Subject Property (lot owners) were required to be joined as parties under HRCP Rule 19.  Because

4

Kellberg sought to have the subdivision declared void, the lot owners were necessary parties under Rule 19(a). Nothing in the record establishes that they could not have been joined. Therefore, we vacate the judgments of the ICA and circuit court and remand to the circuit court with instructions to order the joinder of the lot owners under Rule 19.

On remand, if it is not feasible to join the lot owners, the circuit court must consider the factors set forth in HRCP Rule 19(b) and determine whether in equity and good conscience the action should proceed among the parties before it, or whether the action should be dismissed, the lot owners thus being regarded as "indispensable." In other words, a court may not reach the merits of a case until either the necessary parties are joined, or the court determines that the action may proceed in their absence.

## I.  Background

### A.  Factual background

In April 2000, Prudential Orchid Isle Properties (Prudential) requested from the County of Hawaiʻi Planning Department a determination of the number of pre-existing lots[1] on

---

[1]    HCC § 23-3(21) (Supp. 2012) defines "pre-existing lot" as "a specific area of land that will be treated as a legal lot of record based on criteria set forth in this chapter."

HCC § 23-118(a) (2005) provides that the Planning Director
(continued...)

a 49-acre parcel of land zoned as AG 20[2] in Ninole, Hawaiʻi.

Kellberg I, 131 Hawaiʻi at 516, 319 P.3d at 435.  On May 22,

2000, then-Planning Director, Virginia Goldstein, wrote to

Prudential that the Subject Property consisted of six pre-

existing lots.  Id.  A map attached to Goldstein's letter showed

that the larger 48.47-acre portion of the Subject Property

consisted of five adjoining lots, and that the smaller 0.6-acre

non-contiguous portion of the Subject Property constituted a

sixth lot (identified as Lot 4 on the map).  Id.

In December 2003, the then-owners of the Subject

Property informed the Planning Department that they desired to

consolidate and resubdivide the Subject Property and believed

---

[1](...continued)

> shall certify that a lot is pre-existing if the lot
> meets one of the following criteria:
>
> (a) The lot was created and recorded prior to November
> 22, 1944 or the lot was created through court order
> (e.g. partition) prior to July 1, 1973, and the lot
> had never been legally consolidated, provided that no
> preexisting lot shall be recognized based upon a lease
> except for a lease which complied with all other
> applicable laws when made, including Territorial
> statutes regulating the sale or lease of property
> . . . , and on September 25, 2002, the proposed lot
> contains a legal dwelling, or has been continuously
> leased since January 8, 1948, as a separate unit.
>
> (b) The lot was created prior to December 21, 1966, as
> an agricultural lot in excess of twenty acres pursuant
> to County ordinance.

[2]      "AG 20" means the land is in an agricultural district, so under
Chapter 25 of the HCC, the parcel may not include a lot smaller than twenty
acres.  HCC § 25-5-71 (Supp. 2009).

that the property consisted of at least seven lots.  Id.  In June 2004, Yuen, who had taken over as Planning Director, responded that the Subject Property consisted of two separate lots, one of which was the small non-contiguous plot.  Id.

Also in 2004, Pruglo purchased the Subject Property. Id.  In January 2005, Sidney M. Fuke, a planning consultant working with Pruglo, wrote to the Planning Director to memorialize a discussion between Fuke and Yuen, in which Fuke claimed that the Planning Director agreed that based on Goldstein's May 2000 letter, the Subject Property consisted of six pre-existing lots.  Id.  On April 7, 2005, Fuke, on Pruglo's behalf, filed a "Consolidation/Resubdivision Application" with the Planning Department, seeking to consolidate and resubdivide the Subject Property's six pre-existing lots into six new lots. Id.

On June 1, 2005 the Planning Director granted tentative approval of the preliminary plat map included with Pruglo's application.  Id.  Fuke submitted a final plat map to the Planning Director on July 1, 2005.  Id.  Both the preliminary plat map and the final plat map identified a 48-acre portion of the Subject Property as "Parcel 1," and divided Parcel 1 into six lots.  Id.  Both maps also showed the existence of a 0.6-acre non-contiguous portion of the Subject Property.  Id.  While the

7

non-contiguous portion was labeled "Parcel 2" on the preliminary plat map, it was not labeled on the final plat map. Id.

In July 2005, the Planning Director approved Pruglo's consolidation and resubdivision application. Id. Kellberg, an owner of a parcel of land adjacent to the Subject Property, claimed that he first learned of Pruglo's application and the Planning Director's approval "on August 11, 2005, when he observed a 'for sale' sign on the Subject Property, and a realtor later called him with an offer to sell him a newly created lot along his property line." Id. at 517, 319 P.3d at 436. The next day, Kellberg went to the Planning Department and attempted to file an appeal. Id. A Planning Department employee informed Kellberg that he could not file an appeal because the thirty-day period for filing appeals had already passed. Id. Kellberg left his contact information with the employee and requested that the Planning Director call him later that day. Id. The Planning Director did not call Kellberg. Id.

Kellberg voiced his concerns about the subdivision approval in letters to the Planning Director on August 16, 2005, and January 17, 2006. Id. In both letters, Kellberg explained that because the subdivision resulted in seven lots instead of six, it was inconsistent with the Planning Director's prior approval for a six-lot subdivision. Id. Kellberg further

8

explained that this error was evident in the final subdivision plan on file with the Planning Department, which revealed that the Planning Department did not account for the existence of the non-contiguous portion of the Subject Property.  Id.

In March 2006, Kellberg requested from the Planning Department information on how to appeal the Planning Director's approval of Pruglo's subdivision application to the Board of Appeals, County of Hawaiʻi (BOA).  Id.  The Chairman of the BOA informed Kellberg that he could not appeal because the thirty-day period for filing appeals had passed.  Id.

On April 19, 2006, Pruglo submitted a second consolidation and resubdivision application to the Planning Department, this time seeking to consolidate the non-contiguous portion of the Subject Property with one of the six lots created by the previous subdivision.  Id. at 517-18, 319 P.3d at 436-37. Kellberg asked the Planning Director to notify him when Pruglo's subdivision application was approved.  Id. at 518, 319 P.3d at 437.

Several months later, in August 2006, Kellberg's counsel informed the Planning Director that he assumed an appeal was premature because Kellberg had not received notice of any action on behalf of the Planning Director in regards to Pruglo's pending application.  Id.  Kellberg's counsel requested

9

notification of when tentative approval was granted.  Id.

The following passage is taken from an October 23, 2006 letter from the Planning Department to Kellberg and his counsel:

> On May 22, 2000, the Planning Department sent a letter on this subject stating that the department recognized six pre-existing lots within this tax map key [(TMK)] parcel.  However, in response to a December 24, 2004 request to recognize seven lots, based on some old plantation camp houses, the Planning Department sent a letter stating that only two lots were recognized. This was a mistake, because the Department should have respected the previous determination.  Later, Mr. Fuke, representing the owner, met with me to discuss the case for more lots based on the old houses. . . . When [Fuke] brought it to my attention that the Department had previously recognized six lots, I told Mr. Fuke that we would honor the previous letter, which is our general policy.  I did not re-analyze the number of lots based upon the old houses.
>
> [Pruglo] then submitted a consolidation/resubdivision (Sub. 05-00064) based on the six pre-existing lots. As Mr. Kellberg correctly points out, there was a mistake in the approval of that subdivision.  One of the six recognized lots was a 0.699 acre portion of Grant 11,070.  For some reason, it was not contiguous with the remainder of TMK No. 3-2-2-35.  In the consolidation/resubdivision, the Planning Department did not notice that this noncontiguous portion had been included in the lot count.  Thus, it remained separate, and is now TMK No. 3-2-2-110.  Thus, with the six lots in Sub. 05-00064 and parcel 110, there are now seven lots instead of six.
>
> I am not going to do anything to undo this situation at this time.  Sub. 05-00064 has received final subdivision approval and at least some of the lots have been sold.  Given that parcel 110 is physically separated from the remainder of Sub. 05-00064, and from any property owned by the subdivider, I cannot see a way to erase its separate existence.

(Emphases added).

Kellberg responded to the Planning Director in a February 6, 2007 letter, asserting that it was within the Planning Director's power under Chapter 23 "to resolve the

10

original lot count 'mistake' by simply . . . reducing the total number [of lots] created to the requisite six." Kellberg I, 131 Hawaiʻi at 519, 319 P.3d at 438.

**B.    Proceedings in the circuit court and before the BOA**

In May 2007, Kellberg filed a complaint in the circuit court against the County Defendants. Id. Kellberg's complaint included six counts.

Although not pled with precision, Count I alleged the Planning Director violated Chapter 23 of the HCC by approving Pruglo's application because the subdivision resulted in seven lots rather than two, and that Kellberg was "a person aggrieved" by the approval; Count II alleged that the Planning Director's violations of Chapter 23 rendered the subdivision void and that Kellberg was entitled to a declaratory judgment as to these violations; Count III alleged that the County Defendants violated Kellberg's right to due process under the United States and Hawaiʻi constitutions by not providing him with notice of the Planning Director's approval of Pruglo's application and by depriving him of an opportunity to voice his objections to the approval; Count IV alleged that the Planning Director abused his discretion by not remedying the violations of Chapter 23 in a timely manner and thus his approval of the subdivsion was void; Count V alleged that Kellberg was entitled to an injunction

requiring the County Defendants to comply with Chapter 23 and prohibiting them from permitting more than two lots on the Subject Property and from allowing any subdivision of the Subject Property other than in accordance with the HCC; and Count VI alleged that Kellberg's property had been "adversely and materially impacted" by the Planning Director's approval of Pruglo's subdivision application, that Kellberg suffered "material and substantial disadvantage and monetary harm," and that he was entitled to monetary damages. Id. at 519-20, 319 P.3d at 438-39. Counts II-VI incorporated all of the allegations in the prior counts.

The complaint included the following prayer for relief:

A. Pursuant to all Counts, that SUB-05-00064 be declared illegal and violative of the Subdivision Control Code and therefore void; and

B. That pursuant to Count II and Chapter 632 this Court declare that Defendant Yuen's conduct in approving SUB-05-00064 as described hereinabove is illegal and void as against public policy; and

C. That pursuant to Count III and the Fifth and Fourteenth Amendments to the United States Constitution and Article I, § 5 of the Hawaiʻi Constitution Plaintiff be provided procedural and substantive due process with notice and an opportunity to be heard on the merits of SUB-05-00064; and

D. That pursuant to Count IV this Court find Defendant Yuen's refusal to act to correct SUB-05-00064 constitutes an abuse of discretion and direct him to take such actions as are necessary to correct SUB-05-00064 to comply with the Subdivision Control Code and Zoning Code; and

E. That pursuant to Count V this Court issue its

12

mandatory injunction requiring Defendant Yuen
correct SUB-05-00064 and restraining and
enjoining Defendant Yuen and Defendant County
from approving further subdivision of the
Subject Property unless and until the Subject
Property is brought into compliance with the
Subdivision Control Code; and

F.      That pursuant to Count VI this Court award
        Plaintiff monetary damages according to proof at
        trial; and

G.      That Plaintiff be awarded his attorney's fees
        and costs; and

H.      That this Court grant Plaintiff such other and
        further relief as is just and proper.

(Emphasis added).

The County Defendants raised ten defenses in their

answer, including that Kellberg failed to join necessary parties

and failed to exhaust administrative remedies.

In July 2008, the County Defendants filed a motion to

dismiss for failure to exhaust administrative remedies and for

failure to join an indispensable party (County's Motion to

Dismiss). They argued that (1) the circuit court did not have

subject matter jurisdiction because Kellberg failed to exhaust

all available administrative remedies by not appealing the

Planning Director's October 23, 2006 letter within thirty-days,

and (2) dismissal was warranted because Pruglo was an

"indispensable" party under HRCP Rule 19.[3]

_____

[3]     HRCP Rule 19 (2000) provides, in relevant part:

        (a) Persons to be Joined if Feasible. A person who is
        subject to service of process shall be joined as a

                                                (continued...)

13

At the hearing on the motion,[4] the following exchange occurred between the circuit court, Kellberg's counsel (Whittaker), and the County Defendants' counsel (Udovic):

> THE COURT: -- okay. The indispensable parties one really depends on what remedies you're -- you're really seeking. If you're seeking to undo the subdivision, then maybe Mr. Udovic's correct. If you're just seeking damages, maybe not.
>
> . . . .
>
> . . . But if I determined that it is an illegal subdivision, it will definitely affect the property rights of the people who have now bought the

---

[3](...continued)

> party in the action if . . . (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (A) as a practical matter impair or impede the person's ability to protect that interest or (B) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. . . .
>
> (b) Determination by Court Whenever Joinder Not Feasible. If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

(Emphases added).

[4] The Honorable Glenn S. Hara presided, and continued to do so until December 17, 2010. The Honorable Ronald Ibarra presided thereafter.

14

subdivided lots.

MR. WHITTAKER: Indeed. Indeed. But that is not Mr. Kellberg's complaint and that is not the suit that he has filed; and indeed if the County's got a problem with that or a concern, then all of the remedies Rules 19 [joinder of persons needed for just adjudication], 20 [permissive joinder of parties], 14 [third-party practice], 13 [counterclaim and cross-claim], they join who they want, but they can't make [Kellberg] sue his neighbor because he complains against the County's Planning Director for his illegal action. They can't just say, well, Rule 19, you've got to go through your neighbor. No, no. The bad act complaint that was committed by the County of Hawaii and its Planning Director.

. . . What pleading would I create when I have had no complaint from Mr. Kellberg versus Mr. [Pruglo]? Mr. [Pruglo] is the beneficiary of the County's illegal action . . . .

. . . If they want him in, let them bring him in.

MR. UDOVIC: Your Honor, the real issue here is that the lawsuit filed by Mr. Kellberg is going to affect Mr. [Pruglo] and the other persons by holding the property, and we're not the one doing that. Mr. Kellberg is. It's his obligation to bring in the necessary parties under Rule 19 to make sure that just determination of the action takes place.

THE COURT: Okay. I'm going to, again, deny your motion with respect to the dismissal because of the lack of joinder of indispensable parties. At this point, it doesn't seem to me that the landowners are indispensable.

If the Court -- the Court given the, uh, requested relief I think [it] can give complete relief in terms of what Mr. Kellberg's asking for. I think it's the County's anticipation of the fallout of that relief that will, uh, possibly, uh, affect the rights of other parties; and at that point, I don't know if it's more of a problem of the County versus those landowners and the subdivider without Mr. Kellberg's participation in that matter if it gets that far.

In September 2008, the circuit court entered an order denying the County's Motion to Dismiss, finding that the County

15

failed to establish that administrative processes were available to Kellberg, and that while Pruglo "has an interest in SUB 05-00064, he is not an indispensable party to this action."

In May 2009, Kellberg filed a motion for partial summary judgment as to Counts I (Violation of Statute), II (Declaratory Judgment), and IV (Abuse of Discretion) of the complaint.  Kellberg I, 131 Hawaiʻi at 521, 319 P.3d at 440.  In opposition, the County Defendants again argued that Kellberg failed to join indispensable parties.  In July 2009, the circuit court entered an order granting Kellberg's motion for partial summary judgment, concluding that Kellberg should have been afforded an opportunity to appeal the Planning Director's October 23, 2006 letter, and "remand[ing]" the case to the BOA to consider Kellberg's appeal of the October 23, 2006 letter.  Id. It appears the circuit court did not address the issue of indispensable parties.[5]

In September 2009, Kellberg filed a petition with the BOA appealing the Planning Director's:  (1) January 12, 2005

_____

[5]    Subsequently, on August 12, 2009, "Fuke submitted a revised application for Subdivision 06-000333, to consolidate the non-contiguous parcel (TMK 3-2-02:110) with another lot created by Subdivision 05-00064 (TMK 3-2-02:68)," which revised Pruglo's April 19, 2006 application.  Kellberg I, 131 Hawaiʻi at 518 n.3, 319 P.3d at 437 n.3.  "Although the final approval of Subdivision 06-000333 is not included in the record on appeal," id., it appears the consolidation was approved in December 2010.  On April 13, 2011, Daryn Arai, the Planning Department's Planning Program Manager and an employee of the Planning Department since 1987, declared that the non-contiguous lot had "been consolidated with an adjoining property."

16

decision to honor Goldstein's May 22, 2000 determination that the Subject Property consisted of six lots; (2) July 11, 2005 approval of Pruglo's first consolidation and resubdivision application; and (3) October 23, 2006 letter stating that the Planning Director had valid reasons for not bringing the Subject Property into compliance with Chapter 23. Kellberg I, 131 Hawaiʻi at 521, 319 P.3d at 440. The County Defendants filed a motion to dismiss Kellberg's petition. Id. at 522, 319 P.3d at 441. The County Defendants argued that Kellberg lacked standing, the Planning Director's October 23, 2006 letter was not an appealable decision, and that the BOA lacked jurisdiction because Kellberg failed to file an appeal within the thirty-day time period allowed for appeals.

Following a hearing, the BOA dismissed Kellberg's petition on the basis that it lacked jurisdiction because Kellberg's appeal of the Planning Director's October 23, 2006 letter was filed after the thirty-day appeal period had expired. Id.

In March 2010, Kellberg then filed in the circuit court a motion for partial summary judgment on Count V (Injunction) and for Injunction Against the County of Hawaiʻi (Motion for Injunction). Id. Kellberg's Motion for Injunction sought "an injunction remanding the case to the Planning Department with

17

instructions to the Planning Director to bring the subdivision into compliance with [Chapter 23 of the HCC], and enjoining the County Defendants from 'allowing the further sale, transfer of ownership, or development and improvement of lots created' by the subdivision until compliance is demonstrated."  Id.

In opposition, the County Defendants argued that an injunction was not warranted because, inter alia, such relief would adversely affect the rights of the lot owners who were not parties to the suit, and thus would violate HRCP Rule 19.

At the start of the April 28, 2010 hearing on the Motion for Injunction, the circuit court sought clarification on why the parties were before the court in light of its remand to the BOA:

> THE COURT:  . . . I just have a couple questions, and I understand that this is basically a motion for the summary judgment on injunctive relief, but my recollection is that this case was remanded back to the [BOA]?
>
> MR. UDOVIC:  Yeah.  But the problem is it never came from there the first time, Judge.
>
> THE COURT:  Oh, okay.
>
> MR. UDOVIC:  It was sent there.  You sent it to there.  You called it remand, but it never came up from the [BOA].
>
> THE COURT:  I thought that was more like a -- an order to -- to have the hearing on the appeal.
>
> . . . .
>
> . . . I guess the question I had was, didn't they finally dismiss the appeal on the same grounds that I found that Mr. Kellberg had a basis to go ahead and have an appeal, and that is -- the timing of all

18

> of these matters did not allow him to adequately lodge an appeal with the board?
>
> . . . .
>
>     MR. WHITTAKER:  . . . I pointed out to the [BOA] and to Mr. Udovic, in response to the motion at that proceeding, that it was contrary to the intent and to the letter of Your Honor's order.
>
>     . . . It was manifestly Your Honor's intent that the [BOA] and the administrative agencies deal with the substance of this problem.  Having failed to do so, we have asked Your Honor, on this motion, to deal with it in a very direct way, by instructing the planning director to bring it into compliance.

The court then considered whether it was appropriate to grant the Motion for Injunction.

>     MR. UDOVIC:  I don't think this is an appropriate vehicle for a summary judgment.  I think there needs to be an evidentiary hearing with respect to the issues in this particular case.  As we've pointed out, Your Honor, there are multiple issues in this case which exist, irrespective of the claims, <u>the claims that title to these properties is being affected by requested [sic] injunction, that these parties aren't parties to the -- to the -- to the -- to these proceedings</u>.  They weren't named parties.  I just stand on the issues that were submitted already in the documents that were submitted.
>
>     THE COURT:  So why can't I just grant the motion with respect to, as Mr. Whittaker says, having the planning director put things in order as it should have been, and you guys deal with the parties that need to be dealt with?
>
>     MR. UDOVIC:  Well, if that's the case, Your Honor, I would ask that, if the court issues an order like that, I would ask for an interlocutory appeal.
>
>     THE COURT:  Okay, but why can't -- what would be the problem with that?
>
>     MR. UDOVIC:  Because what he's asking you to do, Judge, is to have the planning director somehow, like <u>there's three different pieces of property which have already been sold.  There's bona fide purchasers on those lots.  Are we going to disassociate those persons with – with -- from their properties?  Are we gonna dispel them?</u>

19

THE COURT: That's your problem, right? You may have to buy 'em out, you may have to pay 'em, I don't know.

MR. UDOVIC: Well, but those are issues, I think, which -- which underlie this entire action, Your Honor.

THE COURT: But then why are we at that point now that we have those three buyers?

MR. UDOVIC: Because the properties were sold before this -- this lawsuit was even filed. You know, they were already owner of this property before this -- before Mr. Kellberg filed this action.

THE COURT: Mr. Whittaker?

MR. WHITTAKER: There was an owner, actually two owners, I believe, before the action was filed. There were no bona fide purchasers for value. These parties knew, or should have known, because Mr. Pruglo knew from the day after the illegal subdivision was approved, that it was objected to by Mr. Kellberg, because a realtor presented at his property line offering to sell him a two-acre parcel of a 49-acre adjoining parcel. And he immediately began questions that's led him, four and a half years later, to Your Honor's courtroom asking that the planning director be told to bring the subdivision into compliance with the subdivision control code.

Yes, Judge, as you pointed out, they may have to deal with those two buyers. One of them is -- has subsequently sold to another party, who certainly cannot claim to be ignorant of the proceedings. She was involved in the [BOA] proceedings. The other buyer, or owner, was Sydney Fuke, the individual who was instrumental in securing this subdivision for the buyer. And they are basically problems that they created with the planning director and the planning department, and they are not Mr. Kellberg's problem.

. . . .

MR. WHITTAKER: . . . I know the court will, rely on Hawaii law in determining the issuance of the injunction. It's clear that we have met the three-part test, including the likelihood of prevailing on the merits. We've prevailed already on Your Honor's determination that there is a problem with compliance with the subdivision control code. The balance of irreparable damage clearly favors Mr. Kellberg in this lawsuit with the planning director and, as Your Honor has pointed out, they turned their back on the opportunity that this court gave them to solve it the

> first time.  It now requires a more clear
> direction. . . .
>
> THE COURT:  . . . I'm inclined to go ahead and
> grant the motion, but I'm reluctant to do so, at the
> same time.  And let me tell you why.
>
> First of all, in the back of my mind, there is a
> -- a feeling that perhaps if, at least on a summary
> judgment level, the issue of whether or not there may
> be adequate remedies at law in terms of damages would
> preclude the granting of a motion for summary
> judgment.
>
> Second of all, the arguments that I have not
> fully resolved in my mind right now is <u>whether
> injunctive relief of the nature that you're requesting
> would, in fact, involve the part -- the interest
> parties who are not joined in the suit.  Being that it
> would affect parcels that are already, at least on the
> book, legally subdivided and already conveyed</u>.  So, at
> this point, I really haven't made up my mind, so I'll
> take the matters under advisement, and I'll reread the
> memos and consider the evidence.

(Emphases added).

The circuit court subsequently entered an order denying

Kellberg's Motion for Injunction, explaining in pertinent part:

> 2.  [Kellberg's Motion for Injunction] seeks to
> have this court issue an injunction prayed for in
> Count V in the initial complaint in this case filed on
> May 11, 2007.  [Kellberg's] Motion for Partial Summary
> Judgment filed on May 27, 2009 resulting in the
> court's June 24, 2009 order remanding the matter to
> the [BOA] did not specifically invoke Count V of the
> complaint.  This court's order dated June 24, 2009,
> however, rendered Count V moot as the remand addressed
> [Kellberg's] right and opportunity to be heard
> referred to in Count V.
>
> 3.  The court denies [Kellberg's] motion for the
> additional reason that [Kellberg] has <u>failed to join
> the property owners of the subdivided property who
> would be affected by undoing the subdivision as
> required by the provisions of Rule 19 of [the HRCP.]</u>
>
> 4.  The motion for summary judgment would also
> be denied because there are <u>genuine issues of material
> fact as to the equities of granting the motion in
> terms of the effect of the injunction on others even
> if they were found to be not required to be joined by</u>

21

> Rule 19 [of the] HRCP. [Kellberg's] motion is not for a temporary restraining order or preliminary injunction to maintain the status quo. It is for a mandatory injunction to undo a completed action of a county agency upon which others have already relied. Granting the plaintiff injunctive relief would entail possible irreparable harm to others. The extent of such harm needs to be balanced as against the harm plaintiff sustains if injunction is not granted. These are material issues of which the facts are not undisputed.
>
> 5. Assuming there were no genuine issues of material fact involving the irreparable harm involved, the court would still deny the motion for injunctive relief finding that the equities in this matter do not favor [Kellberg] even assuming the property may have been subdivided in violation of the provisions of the [HCC]. A mandatory injunction undoing the subdivision would directly affect vested property rights of the persons who are now owners of the subdivided property which clearly outweighs the indirect effects of a presumed illegal subdivision that an adjoining property owner such as Mr. Kellberg might suffer due to, for example, increased density of use of the adjoining property.

(Emphases added).

Approximately three weeks later, the circuit court entered a second order denying the Motion for Injunction. Kellberg I, 131 Hawaiʻi at 523, 319 P.3d at 442. The second order, which was substantially similar to the first order, concluded, in relevant part:

> 1. Plaintiff's Motion for Partial Summary Judgment on Count V is deemed moot in light of the court's ruling on Plaintiff's Motion for Partial Summary Judgment on Count I (Violation of Statute), Count II (Declaratory Judgment) and Count IV (Abuse of Discretion) filed May 27, 2009 ordering the case to the [BOA] for consideration of the issues. Plaintiff's failure to exhaust his administrative remedies forecloses this court from further action in this matter.
>
> 2. Furthermore, the court finds that owners of the subdivided property are indispensible parties to

22

> this action as required under Rule 19 of the HRCP, as to the relief sought on Count V.
>
> 3.    Plaintiff's failure to join owners of the subdivided property means <u>the action cannot proceed in good conscience</u> against the parties before the court.
>
> 4.    A mandatory injunction undoing the subdivision would directly affect vested property rights of the persons who are now owners of the subdivided property and are not parties to this action.
>
> 5.    Genuine issues of material fact exist when balancing the equities between the unnamed property owners and the Plaintiff which <u>would result in irreparable harm to the unnamed property owners if the court were to grant Plaintiff's request for a permanent injunction</u>.
>
> 6.    Even assuming no genuine issues of material fact are in existence, the court denies Plaintiff[']s motion for a permanent injunction.  The grant of an injunction is an equitable remedy and the <u>court is required to balance the equities</u> between the Plaintiff and the unnamed indispensable parties.
>
> 7.    <u>Even in the event the court were to find the subject property was subdivided in violation of the provisions of the Hawaii Subdivision Code, a mandatory injunction would be denied</u>.  The issuance of an injunction would directly affect vested property rights of the persons who are now owners of parcels of the subdivided property.  <u>The equities of the vested property owners clearly outweigh the indirect effect of a presumed illegal subdivision that an adjoining property owner might suffer</u>.

(Emphases added).

On December 9, 2010, nearly two months after the circuit court filed its second order, Kellberg filed a Motion for Leave to File First Amended Complaint (Motion to Amend). Kellberg explained that although he continued to disagree with the circuit court as to the issue of indispensable parties, he had "no alternative but to request permission to amend his

23

Complaint" to include the lot owners as parties.  Kellberg's proposed amended complaint, which was attached to his memorandum as an exhibit, added a number of new counts and named the following defendants in addition to the County Defendants: Pruglo; Christie D. Guastella and John H. Payne, II; John Scott McCann and Frances Santa Maria McCann; and Susan T. McGuire, as owners of lots within the Subject Property.  Those parties were named defendants as to all counts, including the additional counts contained in the amended complaint.

The County Defendants opposed the Motion to Amend, arguing that the amended complaint added new allegations and claims, which Kellberg was dilatory in raising and would "unfairly prejudice the County."  The County Defendants further argued that because additional discovery may be needed with respect to the additional parties, Kellberg "should not be allowed to impose these costs, expenses and delays upon the County simply because he forgot to include necessary parties in his complaint . . . ."

The circuit court granted Kellberg's Motion to Amend on March 3, 2011.  Kellberg, however, did not file the amended complaint.

On April 21, 2011, the County Defendants moved for summary judgment on all counts, asking the court to dismiss the

24

complaint.  Kellberg I, 131 Hawaiʻi at 523, 319 P.3d at 442.  The County Defendants argued that (1) Pruglo's application to consolidate and resubdivide the Subject Property did not seek to change the number of lots on the property and the number of lots did not change, and thus Pruglo's application was exempt from the standards and requirements of the HCC; (2) Kellberg's due process claims were without merit; (3) Kellberg's abuse of discretion claim was without merit; (4) Kellberg made a strategic decision not to name the owners of the lots created by the consolidation and resubdivision of the Subject Property as defendants, it was too late to join the lot owners because the two-year statute of limitations had run, and the case should not proceed without them; and (5) Kellberg failed to exhaust his administrative remedies by failing to appeal within thirty days of both the Planning Director's approval of Pruglo's application and the BOA's ruling against Kellberg, and the circuit court therefore lacked jurisdiction.

The County Defendants argued that the lot owners were indispensable parties because by seeking to void the subdivision, Kellberg's action "would severely affect the property owners who are not parties and cannot be parties."  The County Defendants pointed out that even after the circuit court granted Kellberg permission to add the indispensable parties, Kellberg failed to

25

file his amended complaint and did not add them as parties.

Kellberg responded that: (1) the maps on file with the Planning Department, together with the Planning Director's June 2, 2004 letter, indicate the Subject Property consisted of two pre-existing lots, not six or seven; (2) Kellberg exhausted all administrative remedies available to him prior to filing the lawsuit with the circuit court; and (3) the owners of the lots were not indispensable parties, or were only indispensable as to Count V of Kellberg's complaint.

The County Defendants replied that Kellberg failed to put forth any admissible evidence refuting the County Defendants' arguments, and there were no genuine issues of material fact.

At the May 2011 hearing on the County Defendants' motion for summary judgment, the following exchange occurred between the attorneys and the court:

> MR. WHITTAKER: But, Judge, other than what I put in the Memorandum in Opposition and referenced back in the record, I don't have a whole lot more to add. It is concerning to me that this motion was brought when it was by counsel who is new to the case, to a Court that is new to the case. . . . [O]n today's motion I can stand on my papers, Judge, there's enough in the record. It just cannot be granted.
>
> THE COURT: Yeah, if -- I think you're correct, if there's admissible evidence in the file which you point out to, certainly the Court should review that. But frankly, as you stated, you know, whatever the past record is regarding this, this Court has not reviewed the entire file. Except the motions and pleadings in support of the motion before the Court.
>
> . . . .

26

So if you want me to review the entire file and argue that what is in the entire file is supplement to your position, the Court would appreciate if you would point out that certain document.

MR. WHITTAKER: Well I believe in our statement of facts we refer the Court back to the memorandum that we filed that rebut the spin on the facts that the Defendants tried to give this court. And it is, Judge, a spin. Definitively.

And in answer to the allegations that I am making some kind of scurrilous statement about anybody here in my opposition; not so, Judge. I am simply telling the Court the facts as Plaintiff believes the record clearly supports them. . . .

THE COURT: Okay. Miss Martin?

MS. MARTIN: Thank you, Your Honor.

Your Honor, it's undisputed that pre-existing lots were recognized back in 2000. And it's undisputed that pre-existing lots are not subject to the subdivision ordinance. There is [sic] really no facts in dispute for a jury to decide in this case. . . . The Defendants are entitled to this -- to have summary judgment granted their favor. Thank you, Your Honor.

THE COURT: Okay, I'm going to take it under submission.

In June 2011, the circuit court granted summary judgment in favor of the County Defendants on all counts. Kellberg I, 131 Hawaiʻi at 523, 319 P.3d at 442.

## C. Kellberg's appeal to the ICA

Kellberg timely appealed to the ICA the order granting summary judgment in favor of the County Defendants, and eight

27

prior orders by the circuit court.[6]  Kellberg I, 131 Hawaiʻi at 523, 319 P.3d at 442.

As relevant here, Kellberg argued in his opening brief that (1) he had no available administrative remedy prior to filing the lawsuit and his attempt to pursue an administrative remedy at the BOA had been futile; (2) the circuit court erred in granting summary judgment in favor of the County Defendants and "dismissing the case" based on its finding that the lot owners were "indispensable parties" because there was no evidence in the record that the lot owners could not have been joined; and (3) because the subdivision was illegal, the lot owners' rights did not vest.

The County Defendants answered, inter alia, that (1) Kellberg failed to exhaust administrative remedies; (2) Kellberg made a strategic decision not to name the property owners, who were "indispensible parties"; and (3) the lot owners had significant property rights and the Planning Director appropriately refused to take those away.  The County Defendants

---

[6]     Kellberg appealed the following eight orders that were identified in the circuit court's Final Judgment:  (1) July 24, 2009 order granting Motion for Partial Summary Judgment; (2) September 22, 2010 order denying Motion for Injunction; (3) October 15, 2010 order denying Motion for Injunction; (4) June 14, 2011 order denying Motion for Supplemental Injunctive Relief; (5) June 16, 2011 order denying Motion to Enforce Judgment; (6) June 16, 2011 order granting motion for summary judgment; (7) August 31, 2011 order granting in part and denying in part Motion to Vacate; (8) January 23, 2012 order denying Motion for Clarification; and 9) February 28, 2012 Final Judgment.  Kellberg I, 131 Hawaiʻi at 523 n.12, 319 P.3d at 442 n.12.

also argued that the lot owners could no longer be joined as defendants because the applicable two-year statute of limitations, Hawaiʻi Revised Statutes (HRS) § 657-7[7], had run, and neither HRCP Rule 15(c)[8] nor Rule 17(d)[9] provided relief because Kellberg knew the identities of the lot owners and "made

---

[7]    HRS § 657-7 (1993) provides:  "Actions for the recovery of compensation for damage or injury to persons or property shall be instituted within two years after the cause of action accrued, and not after, except as provided in section 657-13."  HRS § 657-13 (1993) provides an exception to the two-year statute of limitations for plaintiffs who are, at the time the cause of action accrued, minors, insane, or imprisoned.

[8]    HRCP Rule 15(c) (2012) provides:

(c)  Relation back of amendments.  An amendment of a pleading relates back to the date of the original pleading when

(1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or

(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or

(3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

[9]    HRCP Rule 17(d) (2000) provides, in relevant part:

(d) Unidentified defendant.

(1) When it shall be necessary or proper to make a person a party defendant and the party desiring the inclusion of the person as a party defendant has been unable to ascertain the identity of a defendant . . . .

a strategic decision" not to name them as defendants.  The County Defendants pointed out that despite the circuit court's grant of Kellberg's motion for leave to amend his complaint to add the lot owners, Kellberg did not do so.

In his reply, Kellberg conceded the he made a "strategic decision" not to name the lot owners because they were "not necessary parties to the action."  Kellberg argued that he made this decision because the County, not the lot owners, was responsible for the subdivision approval.  Kellberg further argued that the statute of limitations did not apply and that if the County was "genuinely concerned" about being subject to multiple or inconsistent obligations, it "always had the power to insulate itself by way of a third party complaint."

In its June 20, 2013 Memorandum Opinion, the ICA concluded that "Kellberg failed to exhaust the administrative remedies available to him before commencing his action, leaving the circuit court without jurisdiction to act on his complaint." Kellberg I, 131 Hawaiʻi at 524, 319 P.3d at 443.  Based on the foregoing conclusion, the ICA vacated the circuit court's Final Judgment and remanded the case for an order of dismissal.  Id. at 525, 319 P.3d at 444.

D.        **Kellberg I**

Kellberg sought and this court accepted review of the ICA's decision.  This court held that the ICA erred "by holding that Kellberg's Complaint should have been dismissed for lack of subject matter jurisdiction based on the exhaustion doctrine." Kellberg I, 131 Hawaiʻi at 534, 319 P.3d at 453.  Accordingly, this court vacated the ICA's July 19, 2013 Judgment on Appeal, and remanded to the ICA for "consideration of the remaining issues raised by Kellberg in his appeal."  Id. at 537, 319 P.3d at 456.

E.        **The ICA's decision on remand**

On remand, the ICA considered whether the circuit court properly granted summary judgment in favor of the County Defendants.  The ICA first concluded the County Defendants were not entitled to summary judgment on Counts I and II.  As noted above, Count I of Kellberg's complaint alleged the Planning Director violated Chapter 23 of the HCC by approving Pruglo's application because the subdivision resulted in seven lots rather than two, and that Kellberg was "a person aggrieved" by the approval.  Id. at 519, 319 P.3d at 438.  Count II alleged that the Planning Director's violations of Chapter 23 rendered the subdivision void and that Kellberg was entitled to a declaratory judgment as to these violations.  Id.  The ICA therefore

31

concluded that the Planning Director's approval of Pruglo's application was invalid, and that Kellberg was entitled to judgment as a matter of law on Counts I and II. Based on its disposition of Counts I and II, the ICA concluded that Kellberg's constitutional claims asserted in Count III and allegation that the Planning Director abused his discretion and violated the law in Count IV were moot. The ICA then vacated the circuit court's judgment as to Counts V (Injunction) and VI (Damages) because it concluded that the circuit court granted summary judgment in favor of the County Defendants as to Counts V and VI based on its grant of summary judgment as to Counts I-IV. The ICA did not address the Rule 19 issues raised by the parties.

The ICA therefore vacated the circuit court's February 28, 2012 Final Judgment, and remanded with instructions for the circuit court to enter summary judgment in favor of Kellberg on Counts I and II, and to conduct further proceedings consistent with its opinion, including a determination of any appropriate forms of relief in favor of Kellberg.[10]

---

[10] In a footnote, the ICA clarified that its ruling as to Count V

> should not be construed as a ruling that Kellberg is entitled to an injunction prohibiting the County "from permitting more than two (2) lots on the Subject Property," which he is not, or any other specific form of relief. Rather, the circuit court may consider other appropriate relief on remand.

(Emphasis added).

The ICA entered its Judgment on Appeal on May 1, 2014, and the County Defendants timely filed an application for a writ of certiorari.  The County Defendants raise the following three questions in their application:

> 1.  Where the undisputed evidence demonstrated the subject property consists of six, not seven lots, was it error to declare the subdivision invalid?
>
> 2.  Prior to vacating the judgment in favor of the County and entering judgment in favor of Kellberg, should the ICA have considered all of the County's arguments which were relied upon by the Circuit Court in granting summary judgment?
>
> 3.  When a party seeks to invalidate a subdivision must the owners of the subject property be joined as parties prior to voiding the subdivision?

## II.  Standard of Review

This court reviews a grant or denial of summary judgment de novo.  First Ins. Co. of Haw. v. A&B Props., 126 Hawaiʻi 406, 413, 271 P.3d 1165, 1172 (2012) (citing Nuʻuanu Valley Ass'n v. City & Cnty. of Honolulu, 119 Hawaiʻi 90, 96, 194 P.3d 531, 537 (2008)).

> Furthermore, summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties.  The evidence must be viewed in the light most favorable to the non-moving party.  In other words, we must view all of the evidence and inferences drawn therefrom in the light most favorable to the party opposing the motion.

33

Id. (quoting Nuʻuanu Valley Ass'n., 119 Hawaiʻi at 96, 194 P.3d at 537) (brackets omitted).

### III. Discussion

The County Defendants argue that even if the Planning Director's approval of the subdivision was error, the ICA did not consider alternative arguments raised in the County Defendants' motion for summary judgment, including Kellberg's failure to join indispensable parties. Kellberg responds that although the ICA did not explicitly address the County Defendants' alternative arguments, the ICA implicitly rejected them. Kellberg further argues that the lot owners are not indispensable parties under HRCP Rule 19 because they could have been joined by either the County Defendants or by the court.

Resolution of this appeal requires us to consider HRCP Rule 19, which was cited by the County Defendants as an alternative argument in their motion for summary judgment. The purpose of this rule is to protect the parties, and certain non-parties who have the requisite interest in the case, to prevent duplicative litigation and possibly inconsistent judgments. As set forth below, the ICA erred in ruling on the merits of Kellberg's claims without addressing whether the lot owners were required to be joined as parties under Rule 19. Because Kellberg sought to have the subdivision declared void under each count,

34

which would practically impair or impede the lot owners' ability to protect their interests, the lot owners were necessary parties under Rule 19(a).  Nothing in the record establishes that they could not have been joined, and thus the ICA should have vacated and remanded with instructions for joinder under Rule 19.

On remand, if it is not feasible to join the lot owners, the circuit court must consider the factors set forth in Rule 19(b) and determine whether in equity and good conscience the action should proceed among the parties before it, or it should be dismissed, the lot owners thus being regarded as "indispensable."

Rule 19, Joinder of Persons Needed for Just Adjudication, provides in relevant part:

> (a) Persons to be Joined if Feasible.  A person who is subject to service of process shall be joined as a party in the action if . . . (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (A) as a practical matter impair or impede the person's ability to protect that interest or (B) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.  If the person has not been so joined, the court shall order that the person be made a party. . . .
>
> (b) Determination by Court Whenever Joinder Not Feasible.  If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable.  The factors to be considered by the court include:  first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already

35

> parties; second, the extent to which, by protective
> provisions in the judgment, by the shaping of relief,
> or other measures, the prejudice can be lessened or
> avoided; third, whether a judgment rendered in the
> person's absence will be adequate; fourth, whether the
> plaintiff will have an adequate remedy if the action
> is dismissed for nonjoinder.

(Emphases added).

The purpose of Rule 19 is "to protect the interests of absent persons as well as those already before the court from multiple litigation or inconsistent judicial determinations." 7 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 1602 (3d ed. 2001) § 1602.[11]

An analysis under Rule 19 "typically follows two steps."[12] Marvin v. Pflueger, 127 Hawaiʻi 490, 499, 280 P.3d 88,

---

[11] Although this treatise interprets Rule 19(a) of the Federal Rules of Civil Procedure (FRCP), this court has observed that "[b]ecause [HRCP Rule 19 is] in all relevant aspects substantively identical to the federal rule[], we may look to federal cases interpreting their rules for persuasive guidance." Marvin v. Pflueger, 127 Hawaiʻi 490, 499 n.11, 280 P.3d 88, 97 n.11 (2012).

[12] The timing for raising a defense under Rule 19 is critical. In Marvin, this court held that under HRCP Rule 12(b)(7), the defense of failure to join a necessary party under Rule 19(a) must be raised by the defendant in its answer or by motion, and "before pleading if a further pleading is permitted[.]" 127 Hawaiʻi at 500, 280 P.3d at 98. Although the term "necessary parties" is not used in Rule 19(a), Hawaiʻi courts sometimes refer to persons that should be joined as parties if feasible under Rule 19(a) as "necessary parties." See, e.g., Life of the Land v. Land Use Comm'n, 58 Haw. 292, 298, 568 P.2d 1189, 1194 (1977) ("If the necessary parties cannot be made parties to the action then the court should determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person(s) being thus regarded as indispensable." (internal quotations omitted)). If such a defense is not timely raised (i.e., in an answer or by motion, and "before pleading if a further pleading is permitted") it is deemed waived under Rule 12(b)(h). Marvin, 127 Hawaiʻi at 500, 280 P.3d at 98. Marvin further held that Rule 12 and Rule 19 read together allow "the defense of failure to join an indispensable party under Rule 19(b)" to be raised at any time. Id. at 502, 280 P.3d at 100 (emphasis in original).

(continued...)

97 (2012) (citing <u>UFJ Bank Ltd. v. Ieda</u>, 109 Hawaiʻi 137, 142, 123 P.3d 1232, 1237 (2005)).  The first step includes determination of whether Rule 19(a) applies and of whether joinder is feasible:  the court "must determine whether an absent party should be joined if feasible according to the factors listed in subsection (a)."  <u>Id.</u>

> Rule 19(a) is applicable when nonjoinder would have either of the following effects.  First, it would prevent complete relief from being accorded among those who are parties to the action or, second, <u>the absentee "claims an interest relating to the subject matter of the action and is so situated" that the nonparty's absence from the action will have a prejudicial effect on that person's ability to protect that interest or will "leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations."</u>

Wright et al., <u>supra</u> § 1604 (emphasis added).

If Rule 19(a) applies, the court then considers whether the person is subject to service of process in determining whether joinder is feasible.  If joinder is feasible, the court must order it.  HRCP Rule 19(a) ("A person who is subject to service of process <u>shall</u> be joined as a party in the action . . . . If the person has not been so joined, the court <u>shall</u> order that the person be made a party."  (Emphases added)); <u>see</u>

---

[12](...continued)
    The timing/waiver issues addressed in <u>Marvin</u> are not implicated here because the County Defendants raised the defense of "necessary parties" in their Answer.  The County Defendants also raised the Rule 19(a) defense in their Motion to Dismiss and their Memorandum in Opposition to Kellberg's Motion for Injunction.

also Wright et al., supra § 1611 ("If joinder is feasible, the court must order it; the court has no discretion at this point because of the mandatory language of the rule.").

Under the second step of the Rule 19 analysis, "if the party meets the requirements under subsection (a) but it is not feasible to join the party to the lawsuit, the court must proceed to Rule 19(b) to determine whether it may decide the case without the nonparty." Marvin, 127 Hawaiʻi at 499, 280 P.3d at 97. Factors to be considered by the court under this second step include: "to what extent a judgment rendered in the person's absence might be prejudicial," the extent to which "prejudice can be lessened or avoided," "whether a judgment rendered in the person's absence will be adequate," and "whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder." HRCP Rule 19(b). This list of considerations is not exhaustive, and "to a substantial degree the effective operation of the rule depends on the careful exercise of discretion by the [trial] court." Wright et al., supra § 1608. If, under this second step, the court dismisses the action rather than moving forward without the absent party, the nonparty is described as "indispensable." Marvin, 127 Hawaiʻi at 499, 280 P.3d at 97.

38

Kellberg's prayer for relief in his complaint explicitly sought to void the subdivision as "to all counts." In their motion for summary judgment, the County Defendants raised numerous arguments, including that Kellberg failed to exhaust his administrative remedies and that the lot owners were indispensable parties because Kellberg failed to join them and could no longer do so. The circuit court granted the County Defendants' motion with little explanation, stating only that "the record reflects the absence of any genuine issue of material fact." On appeal in the ICA, the parties' arguments included both the exhaustion issue and the Rule 19 joinder issue.

The ICA affirmed the circuit court's judgment, concluding that the circuit court lacked jurisdiction because Kellberg failed to exhaust his administrative remedies. Having concluded that the circuit court lacked jurisdiction, the ICA did not consider the County Defendants' remaining arguments--including the issue of whether the lot owners were indispensable parties. In Kellberg I, this court vacated the ICA's judgment and remanded the case, "for consideration of the remaining issues raised by Kellberg in his appeal to the ICA." 131 Hawai'i at 537, 319 P.3d at 456. Although Kellberg did not file a cross motion for summary judgment, the ICA concluded on remand that the subdivision was invalid and that Kellberg was entitled to

39

judgment as a matter of law, without considering the parties' arguments under Rule 19.  The ICA erred in this regard.

In the ICA, Kellberg argued that even if the lot owners should have been joined under Rule 19(a), there was no evidence in the record that they could not have been joined.  Therefore, dismissal of Kellberg's complaint and summary judgment in favor of the County Defendants was inappropriate.  Specifically, Kellberg argued that "[t]he remedy for an absent party adjudged to be indispensable is not to take the radical step of dismissing the case . . . .  Instead, under HRCP 19, the court was required to evaluate whether the missing person was needed for just adjudication, determine whether the person can be joined, and if so, to order joinder."

Application of Rule 19 to the facts of this case demonstrates that Kellberg should be ordered to join the lot owners as defendants.  As set forth above, under the first step of the Rule 19 analysis, the initial question is whether the absent party "claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect that interest."  HRCP Rule 19(a).  The lot owners meet this requirement, and the circuit court recognized as much in denying Kellberg's Motion for

40

Injunction, noting that "undoing the subdivision would directly affect vested property rights of the persons who are now owners of the subdivided property."[13] The lots are owned by several owners, who therefore claim an interest relating to the Subject Property. Further, invalidating the subdivision would "impair or impede" the lot owners' ability to protect their respective property interests. See, e.g., Haiku Plantations Ass'n v. Lono, 56 Haw. 96, 103, 529 P.2d 1, 5 (1974) ("This court cannot undertake to hear and determine questions affecting the interests of these absent persons unless they are made parties and have had an opportunity to come into court." (quotation marks and citation omitted)).

Moreover, failing to include the lot owners in the instant case may leave the County Defendants "subject to a substantial risk of incurring double, multiple, or inconsistent obligations." HRCP Rule 19(a). For example, if the subdivision is rendered invalid, the lot owners will likely seek their own

_____

[13] On appeal in the ICA, Kellberg argued that the lot owners did not have vested property rights because the subdivision was void. This argument is without merit because, as noted above, the first step of the Rule 19 analysis asks whether the absent party "claims an interest relating to the subject of the action[,]" not whether the absent party has a vested interest. HRCP Rule 19(a). Put another way, the question of whether an absent party has an interest sufficient to trigger the obligation to join that party is distinct from the ultimate determination of the merits of that claim. Additionally, an absent party may be silent and still "claim an interest" under Rule 19(a) because "'claims an interest' in this context means nothing more than appears to have such an interest." Tell v. Trs. of Dartmouth Coll., 145 F.3d 417, 419 (1st Cir. 1998).

relief from the County Defendants.  In these circumstances, Rule 19(a) plainly applies.  Relatedly, granting summary judgment in favor of the County Defendants without first ordering joinder of the lot owners was inappropriate.[14]  See HRCP Rule 21 (2000) ("Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just.").

Kellberg appears to now argue that the lot owners are not necessary because "he asserted only that the Director (1) wrongfully approved the 2005 subdivision and (2) denied Kellberg due process."  Although this argument is ambiguous, it appears that Kellberg may be suggesting that he seeks only limited relief, such as damages.  But his prayer for relief in his complaint explicitly sought to void the subdivision as "to all counts."  Voiding the subdivision would certainly impair or

---

[14]   We note that the circuit court should have ordered joinder of the lot owners at several points earlier in the litigation, which could have prevented the delay and inconvenience that the parties now face and Rule 19 was intended to avoid.  For example, the circuit court should have ordered joinder of the then-existing lot owners when it ruled on the County Defendants' Motion to Dismiss and before ruling on Kellberg's first motion for partial summary judgment.  The County Defendants had raised the issue of joinder in both proceedings.  Further, although the circuit court appropriately concluded that the lot owners were required to be made parties as to Count V in its denial of Kellberg's second motion for partial summary judgment, the circuit court should have also specifically ordered that the lot owners be made parties as to all counts in Kellberg's complaint, since it sought to invalidate the subdivision in all of the counts.  See HRCP Rule 19(a) ("A person who is subject to service of process shall be joined as a party in the action . . . .  If the person has not been so joined, the court shall order that the person be made a party."  (Emphases added)).

impede the lot owners' ability to protect their ownership interests.

Under Rule 19, the next question is whether joining the lot owners is feasible.  Here, there is no suggestion in the record that the lot owners are not subject to service of process or that joinder is otherwise not feasible.  Indeed, in the ICA, Kellberg asserted that "[t]here is no basis in the record to conclude that the lot owners could not be joined as a party to Kellberg's lawsuit."  (Internal quotation marks and brackets omitted).  Moreover, after the circuit court denied Kellberg's motion for partial judgment as to Count V, Kellberg moved for leave to file an amended complaint, which would have added the lot owners as defendants as to all counts.  The circuit court granted Kellberg's Motion to Amend, but Kellberg did not file his amended complaint because he believed the lot owners "were not necessary parties to the action."[15]

In short, the record does not establish that joinder of the lot owners is not feasible.  Because it appears that joinder is feasible, it must be ordered.[16]  See HRCP Rule 19(a) ("A

---

[15]    We note that Kellberg should have filed the amended complaint once approved by the circuit court.  See HRCP Rule 15(a)(2) (2012) (stating that if a motion to amend a pleading is "granted or allowed, the amended pleading shall be filed . . . and served forthwith.").

[16]    Because nothing in the record suggests joinder is infeasible, we need not reach the second step of the inquiry under Rule 19(b), i.e., whether

(continued...)

43

person who is subject to service of process <u>shall</u> be joined as a party in the action . . . . If the person has not been so joined, the court <u>shall</u> order that the person be made a party." (Emphases added)).

As noted above, the County Defendants argue that the lot owners are indispensable under Rule 19(b) because the statute of limitations prevents the circuit court from joining them as parties. This argument is without merit because the statute of limitations is a personal defense that a defendant may waive; thus, it is unclear at this point whether the lot owners will even assert it and, if so, whether it will apply. See <u>Mauian Hotel v. Maui Pineapple Co.</u>, 52 Haw. 582, 569, 481 P.2d 310, 314 (1971) (holding that "the statute of limitations is a personal defense and a person may waive the benefits of such statute"). Moreover, Rule 19(a) implies that feasability is determined by whether a person is subject to service of process, rather than the likelihood of success on the merits. See HRCP Rule 19(a) ("A person who is subject to service of process shall be joined as a party[.]").

---

[16](...continued)
the circuit court may decide the case without the lot owners. See <u>Marvin</u>, 127 Hawaiʻi at 499, 280 P.3d at 97 (holding that the court must proceed to Rule 19(b) only if the non-party meets the requirements under Rule 19(a) and cannot be joined). If that issue arises, it can be considered by the circuit court in the first instance on remand.

44

Finally, Kellberg asserts that when he sought to amend his complaint to add the lot owners, the County Defendants "objected to their inclusion." In opposing the Motion to Amend, however, the County Defendants did not argue that the lot owners were not necessary under Rule 19 but instead argued that joining the lot owners would "unfairly prejudice the County" by causing additional "costs, expenses, and delays." Regardless, the circuit court granted Kellberg's motion for leave to amend, but Kellberg did not file an amended complaint.

In sum, the ICA vacated the judgment in favor of the County Defendants and directed that the circuit court enter judgment in favor of Kellberg based on its conclusion that the subdivision was invalid. Because invalidating the subdivision may impair or impede the lot owners' respective property rights, and there is no indication that it is not feasible to join the lot owners, the ICA should have vacated the circuit court's judgment and remanded the case with instructions to order that the lot owners be joined. See Life of the Land, 58 Haw. at 298, 568 P.2d at 1194 (holding that "the circuit court's dismissal of appellants' complaint for failure to join indispensable parties was" in error because after finding that the parties were necessary under Rule 19(a), "the court should have ordered that they be made parties"); see also Haiku Plantations Ass'n, 56 Haw.

45

at 102, 529 P.2d at 5 (holding that a court was "in no position to render a binding adjudication" if that ruling could affect a non-party holding a reversionary interest in the parcel of land that was the subject of the litigation).

### IV. Conclusion

In conclusion, we vacate the ICA's judgment, vacate the circuit court's judgment, and remand the case to the circuit court for further proceedings consistent with this opinion.

Specifically, the circuit court must order that the lot owners be made parties if feasible pursuant to HRCP Rule 19(a). If it is not feasible to join the lot owners, the circuit court must then determine, based on consideration of the factors set forth in Rule 19(b), whether the action should proceed or should be dismissed.

Laureen L. Martin
for petitioners

Robert H. Thomas
for respondent

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Colette Y. Garibaldi

